**Affirmed and Memorandum Opinion filed August 9, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00276-CV

## IN THE INTEREST OF M.J.W., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2010-06923J**

## M E M O R A N D U M    O P I N I O N

Appellant M.M.W. ("Mother") appeals the trial court's final decree terminating her parental rights and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of M.J.W. ("Matthew").[1] In four issues Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings under section 161.001 of the

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, we will use a fictitious name to refer to the child.

Texas Family Code. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Pretrial Removal Affidavit

In 2010, the Department received a report alleging neglectful supervision of three children by Mother and the children's father or stepfather. [2] It was reported that Mother and father/stepfather placed the children in serious danger by allowing them to stay in a home that was dangerous and uninhabitable. It was asserted that they did not provide adequate supervision for the children, which allowed Matthew, who is diagnosed with autism, to escape the home and wander the service road of the Eastex Freeway shortly after midnight. Matthew was seven years old at the time he was found on the freeway. Officers located Matthew's stepfather, who was looking for him. They were informed that Mother was at the grocery store. Officers waited one and a half hours for Mother to pick up Matthew, but she never arrived to pick him up.

The Department investigator went to Mother and stepfather's home and found them lying on a mattress in the living room. Mother was intoxicated and said she did not live in that home, but gave another address and asked the investigator to visit that address. The investigator asked both Mother and stepfather to come to the youth service center where the children were being held. The investigator went with Mother to the second address where Mother said she lived. The home was "in a habitable condition," but had no refrigerator, stove, or gas in the home. The investigator left and told Mother and stepfather to come to the youth service center to discuss placement information with the Department. Mother and stepfather never arrived at the service center. The investigator asked a police officer to visit

---

[2] The affidavit refers to this individual as "father/stepfather"; he is not otherwise identified.

the home to determine why Mother had not come to the service center. The police officer reported that Mother was intoxicated and said she did not have transportation to the service center.

**B. History with the Department**

The children were removed and placed in the Department's custody in November 2010. On November 23, 2010, the Department filed a first amended petition for termination of Mother's parental rights to all three children. In August 2011, Matthew was placed with a therapeutic foster mother who had considerable experience with special needs children. Although he was nonverbal, he seemed happy and was bonded with the foster mother. Mother's other two children were placed with a maternal aunt.

On May 3, 2012, the trial court signed an agreed order in which it determined that appointment of a parent as managing conservator for the children would not be in the children's best interest because appointment would significantly impair the children's physical health or emotional development. The Department was appointed sole managing conservator of the children and Mother was appointed possessory conservator. On April 7, 2014, Mother's cousin was appointed sole managing conservator of the children and Mother remained as possessory conservator.

On August 14, 2015, the Department filed an original motion to modify for conservatorship and for termination of parental rights to Matthew. The Department alleged that the circumstances of Matthew, a conservator, or other party had materially and substantially changed since the rendition of the prior order. After the filing of the request for termination and after the issuance of a family service plan, Mother tested positive for cocaine.

After a trial, the trial court found that the circumstances of Matthew or the sole managing conservator, possessory conservator, or other party affected by the prior order had materially and substantially changed since rendition of the order. The court removed Mother as managing conservator and terminated her parental rights, finding by clear and convincing evidence that termination is in the child's best interest and that Mother:

> engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(E), Texas Family Code;

> failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(1)(O), Texas Family Code; and

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and (1) failed to complete a court-ordered substance abuse treatment program; or (2) after completion of a court-ordered substance abuse treatment program continued to abuse a controlled substance, pursuant to § 161.001(b)(1)(P), Texas Family Code.

Mother appeals from this judgment arguing that the evidence is legally and factually insufficient to support the predicate termination grounds or that termination is in the best interest of the child.

### C. Trial Testimony

Prior to the start of testimony, the trial court admitted Matthew's birth certificate, a certificate of paternity registry search, the family service plans for Mother, and the trial court's order requiring compliance with the plans. In addition, the trial court admitted evidence of seven positive drug tests administered between

4

the date of the original removal and the date of trial. In each of the seven tests, Mother tested positive for cocaine.

Mary Ndukwe, the Department caseworker, testified to the facts surrounding the removal of the children from Mother as described in the pretrial removal affidavit. Ndukwe testified that while the case has been pending Mother continued to test positive for drugs. Ndukwe described Matthew as "severely autistic" and unable to care for himself. He is doing well in his current foster home placement and the Department is seeking permanent placement for him. The foster mother is unable to adopt Matthew due to her advanced age. Mother has visited Matthew and her visits were very appropriate, but Mother has missed several visits. Mother completed an outpatient drug treatment program, but has tested positive for drugs since completion of the program with the exception of her last drug test. The outpatient program asked Mother to go to an inpatient program, but Mother refused. Mother also failed to complete the services required by her family service plans. The Department sought termination to enable permanent adoption for Matthew.

Mother testified that despite positive drug tests she had been clean for four years and six months. She stated that the positive drug tests during that period of time must have been false positives. During Mother's testimony the trial court admitted evidence of prescription medication Mother was taking. According to the information admitted, one of the medications is a selective serotonin reuptake inhibitor used to treat depression and generalized anxiety disorder. The other medication is an antidepressant that may also be used as a sleep aid.

Mother had been visiting Matthew and wants to continue her relationship with her child. Mother also testified that she had been going to counseling sessions, and has been working part-time in home healthcare since April 2014. Mother

5

testified that she spent 41 days in inpatient drug treatment and 30 days in outpatient treatment. Mother testified that she understood the importance of remaining drug free to have a relationship with her child.

## II. ANALYSIS

### A. Predicate Termination Grounds

In Mother's second issue she argues the evidence is legally and factually insufficient to support the termination of her parental rights under Texas Family Code section 161.001(1)(O). Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(b)(1), (2) (West 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of

6

the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d at 336. We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

Relevant to this issue, section 161.001(b)(1) provides that termination is warranted if the trial court finds by clear and convincing evidence, in addition to the best interest finding, that the parent has:

(O) failed to comply with the provisions of a court order that

7

specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

Tex. Fam. Code Ann. § 161.001(1)(O).

Mother does not challenge the fact that Matthew was removed from her under Chapter 262 for abuse or neglect, or that Matthew was in the Department's conservatorship for the requisite period of time. Mother admits she did not fully comply with the family service plan, but argues she substantially complied with the plan.

The record reflects that the court approved Mother's service plan and ordered compliance with its terms. *See* Tex. Fam. Code Ann. §§ 263.101–106; 161.001(l)(O). Mother's family service plan was admitted into evidence at trial. The plan required Mother to:

- Submit to drug and alcohol assessment and follow any and all recommendations;
- Participate in random drug testing twice per month;
- Refrain from criminal activity;
- Participate in intensive family reunification process if her case is accepted;
- Obtain a legal residence;
- Secure and maintain legal employment and provide proof of income;
- Attend all educational meetings concerning her child in school;
- Attend all medical appointments; and
- Visit Matthew once per week at the foster parent's home with transportation assistance from the Department.

8

The record reflects that Mother did not follow all recommendations of the drug treatment facility and did not remain drug free, despite knowing she had to remain drug free to avoid termination of her parental rights. In her brief Mother admits she did not fully comply with the family service plan.

Mother argues she substantially complied with the service plan and her visits with Matthew were "very appropriate." The Family Code, however, provides that even substantial compliance with a family service plan is insufficient to avoid a termination finding under subsection O. *In re C.M.C.*, 273 S.W.3d at 875; *see also In re T.T.*, 228 S.W.3d 312, 319–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (noting Texas courts have uniformly found substantial compliance with the provisions of a court order inadequate to avoid a termination finding under subsection O). Sporadic incidents of partial compliance with court-ordered family service plans do not alter the undisputed fact that the parent violated many material provisions of the trial court's orders. *See In re J.F.C.*, 96 S.W.3d at 278.

By failing to complete her service plan, Mother has not demonstrated an ability to provide Matthew with a safe environment. *See In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination under subsection O because mother failed to meet her service plan's material requirements including drug assessment, finding a job, and providing a safe home). Mother continued to test positive for cocaine after signing the service plan and knowing that remaining drug free was important for her relationship with Matthew. Mother also missed visits with Matthew.

Reviewing the evidence under the appropriate standards, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's rights is warranted under section 161.001(1)(O). Because there is legally and factually sufficient evidence of Mother's failure to comply with the service

9

plan, we need not address her arguments that the evidence is insufficient to support the trial court's findings under sections 161.001(1)(E) and (P). *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest."). We overrule Mother's second issue.

## B.     Best Interest of the Child

In her fourth issue Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in Matthew's best interest.

A strong presumption exists that the best interest of the child is served by keeping the child with his natural parent, and the burden is on the Department to rebut that presumption. *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Evidence supporting termination under section 161.001(1)(O) supports a finding that termination is in the best interest of the child. *See In re C.H.,* 89 S.W.3d at 28. ("While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues.").

The factors the trier of fact may use to determine the best interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not

appropriate; and (9) any excuse for the parents' acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code Ann. § 263.307(b) (West 2014) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment).

There is a strong presumption that the best interest of a child is served by keeping the child with his natural parent. *In re D.R.A.*, 374 S.W.3d at 533. Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). Mother contends that the presumption in her favor is not rebutted because the Department failed to prove a pattern or course of continuing conduct regarding her drug use and that her visits with the Child were described as "very appropriate."

### 1. Needs of and Danger to the Child

With regard to the present and future emotional and physical needs of the child and the present and future emotional and physical danger to the child, the record reflects that Matthew came into the Department's care because he had been left alone and was found wandering on a freeway after midnight. Matthew has been diagnosed with autism and is nonverbal. Matthew is unable to care for himself or assert his needs.

### 2. Stability and Compliance with Services

In determining the best interest of the child in proceedings for termination of parental rights, the trial court may properly consider that the parent did not comply with the court-ordered service plan for reunification with the child. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) ("Many of the reasons supporting termination under subsection O also support the trial court's best interest finding.").

In this case, Mother admits she did not complete the tasks contained in the family service plan. Despite positive drug tests for cocaine, Mother denied illegal drug use. The record contains conflicting evidence on Mother's drug treatment. The caseworker testified that Mother ignored the recommendation of the drug treatment facility that she submit to inpatient care. Mother testified that she spent 41 days in an inpatient treatment facility. Despite Mother's treatment, however, she continued to test positive for cocaine. Mother's failure to comply with court-ordered tasks, drug use during the termination proceedings, and failure to provide a safe and stable environment support the trial court's finding that termination is in the best interest of the child.

### 3. Child's Desires and Proposed Placement

Matthew is autistic, nonverbal, and unable to express his desires. When a child is unable to express his desires, the fact finder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The stability of the proposed home environment is an important consideration in determining whether termination of parental rights is in the child's best interest. *See In re J.N.R.*, 982 S.W.2d 137, 143 (Tex. App.—Houston [1st Dist.] 1998, no pet.). A child's need for permanence through the establishment of a stable, permanent home has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

In this case, the caseworker testified that while Matthew is doing well in his

foster placement and has improved, the foster mother is unable to commit to permanent adoption due to her age. Matthew is 13 years old, and the Department is aware that an older child is more difficult to place in permanent adoption. After termination, the Department can institute a nationwide search for a permanent home for Matthew.

### 4.    Parenting Abilities and Family Support

The evidence showed that Mother did not demonstrate the ability to safely parent Matthew. Matthew and his siblings were initially removed because they were left alone and Matthew was found wandering on a freeway. When the Department asked Mother to pick up her children from the youth service center she did not come to pick them up. When the Department's investigator visited Mother's home, she found no refrigerator or working stove. One of Matthew's siblings told the investigator he had not eaten dinner that night. While Mother's visits with Matthew were appropriate, she did not attend all of her scheduled visits. Moreover, Mother continued to test positive for cocaine despite a service plan requiring her to remain drug free in order for her children to be returned to her.

The record contains evidence supporting the best interest finding based on Mother's drug use and failure to comply with court-ordered services. *See In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) (considering the parent's drug use and failure to comply with a family service plan in holding the evidence supported the best interest finding).

Based on the evidence presented, the trial court could have reasonably formed a firm belief or conviction that terminating Mother's parental rights was in Matthew's best interest so that he could promptly achieve permanency through

13

adoption. *See In re T.G.R.-M.*, 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *In re M.G.D.*, 108 S.W.3d 508, 513–14 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Applying the applicable *Holley* factors to the evidence, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's rights was in the best interest of the child. *See E.C.R.*, 402 S.W.3d at 249–50 (finding sufficient evidence that termination was in the best interest of the child and considering reasons supporting termination under subsection (O) supported best interest finding).

## C. Material and Substantial Change

In challenging the trial court's best-interest finding, Mother further argues that the Department failed to prove that there has been a material and substantial change in the circumstances of Matthew, a conservator, or other party since the trial court's prior order dated June 11, 2014.

In its original motion to modify for conservatorship, and for termination in suit affecting parent-child relationship, the Department alleged that the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order. In the decree of termination, the trial court found that the "circumstances of the Child or Sole Managing Conservator, Possessory Conservator, or other party affected by the prior order . . . dated June 11, 2014 have materially and substantially changed since the rendition of the order to be modified that the appointment of [The Department] as Sole Managing Conservator would be a positive improvement for the child."

Termination of a parent's rights can be sought under section 161.004 of the

Texas Family Code when termination has been previously denied. Section 161.004 provides:

> (a) The court may terminate the parent-child relationship after rendition of an order that previously denied termination of the parent-child relationship if:
>
> (1) the petition under this section is filed after the date the order denying termination was rendered;
>
> (2) the circumstances of the child, parent, sole managing conservator, possessory conservator, or other party affected by the order denying termination have materially and substantially changed since the date that the order was rendered;
>
> (3) the parent committed an act listed under Section 161.001 before the date the order denying termination was rendered; and
>
> (4) termination is in the best interest of the child.
>
> (b) At a hearing under this section, the court may consider evidence presented at a previous hearing in a suit for termination of the parent-child relationship of the parent with respect to the same child.

Tex. Fam. Code Ann. § 161.004.

Mother asserts that, having sought modification in its petition, the Department was required to plead and prove the grounds in section 161.004 in addition to the grounds for termination under section 161.001 Having previously denied termination of Mother's parental rights, the trial court could only terminate Mother's rights under section 161.001 if it found clear and convincing evidence of acts or omissions having occurred since the previous order, or under section 161.004, which requires evidence of a material and substantial change since the date of the previous order. *See In re D.N.*, 405 S.W.3d 863, 870 (Tex. App.—Amarillo 2013, no pet.), *citing In re K.G.*, 350 S.W.3d 338, 352 (Tex. App.—Fort Worth 2011, pet. denied).

There are no definite guidelines as to what constitutes a material and

substantial change in circumstances under section 161.004. *In re C.A.C.*, 14-12-00396-CV, 2012 WL 4465234, at *9 (Tex. App.—Houston [14th Dist.] Sept. 27, 2012, no pet.). Mother's sole argument in this regard consists of the statement that, "The Department also failed to prove that there is a material and substantial change as to the circumstances of [Matthew], a conservator, or other party since the trial court's prior order dated June 11, 2014."

On June 11, 2014, the trial court signed a decree denying the Department's petition to terminate Mother's rights. Mother subsequently signed a new family service plan requiring her to, among other things listed above, attend all medical appointments, and visit Matthew once per week. The trial court signed a placement order incorporating "the recommendations for the child set out in the services plans and/or Placement Review Reports filed with the Court."[3] In a placement review report filed July 7, 2015, it was noted that Mother did not attend any of Matthew's medical appointments despite offers by the foster parent to provide transportation. The report also notes that Mother had not visited Matthew in over two months.

Reviewing the evidence under the appropriate standards, we conclude that the trial court could have formed a firm belief or conviction that Mother's failure to visit for over two months and failure to attend medical appointments constituted a material and substantial change as to the circumstances of Matthew, a conservator, or other party since the trial court's prior order dated June 11, 2014. We overrule Mother's fourth issue.

---

[3] Although this order was not admitted as an exhibit at trial, it is contained in the clerk's record filed on appeal. We presume the trial court took judicial notice of its record without any request being made and without announcement that it has done so. *In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Because we may presume the trial court took judicial notice of its own records, we may consider the documents in the clerk's record in reviewing the sufficiency of the evidence to support the trial court's findings. *Id.* at 505.

We affirm the trial court's judgment.

/s/    William J. Boyce
        Justice

Panel consists of Justices Boyce, Christopher, and Jamison.