

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00009-CV

_____

## IN THE INTEREST OF C.R., A.R., AND I.R., CHILDREN

On Appeal from County Court at Law Number 1
Randall County, Texas
Trial Court No. 6985-L1; Honorable Jack M. Graham, Presiding

April 16, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellants, E.R. and R.R., appeal the trial court's order terminating their parental rights to their children, C.R., A.R., and I.R.[1]  The children's mother, E.R., presents three issues questioning the legal and factual sufficiency of the evidence to support the two statutory grounds for termination as well as the trial court's best interest finding.  By separate brief, the children's father, R.R., presents two issues challenging the legal and

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2018).  *See also* TEX. R. APP. P. 9.8(b).

factual sufficiency of the evidence to support termination under the two statutory grounds.[2]  We affirm.

BACKGROUND

The parents and their children have been involved with the Texas Department of Family and Protective Services since 2007.  In 2010, the parents and the Department entered into an *Agreed Final Order in Suit Affecting the Parent-Child Relationship* involving C.R.  The children's ages range from ten to fourteen with C.R. being the oldest of the three.[3]  C.R. has long-term special needs.  He takes psychotropic medications that require monitoring and has anger and behavioral issues.  A.R. also has anger issues and impulsiveness that is controlled with medication, and I.R. has dyslexia and psychiatric issues.

In May 2017, the family was involved in a family-based service case in which the court ordered them to participate in various services.  Months later, in September, an allegation that I.R. went to school hungry and wearing a coat with urine on it resulted in an intake report.  Those allegations, coupled with the Department's concern that the parents were abusing drugs, resulted in removal of the children.[4]  The family-based service plan developed in two separate cases:  one case to modify the prior 2010 order involving C.R., which included the possibility of termination of parental rights and a

---

[2] In the *Table of Contents* of his brief, R.R. only challenges the factual sufficiency of the evidence; however, in the body of the brief, he challenges both the legal and factual sufficiency of the evidence to support the grounds for termination.  Thus, we will review the evidence under both standards.

[3] E.R. and R.R. have a fourth child who is younger than the three that are the subject of this appeal. The fourth child lives with E.R.'s brother in California.

[4] At the final hearing, the Department's witness acknowledged that allegations of the children being hungry and the parents abusing drugs may not have been justifications for removal.

second case which was initiated as a pleading in intervention regarding the two younger children, by which the Department also sought termination as an alternative.[5]

The trial court appointed the Department as temporary managing conservator of all three children in October 2017. The trial court's temporary orders included a paragraph notifying each parent of certain actions required of them in order to obtain the return of their children and admonished them that full compliance was required. In May 2018, the Department determined that reunification goals were unsuccessful and proceeded with termination of parental rights. The Department's supervisor explained that once the goal shifted from reunification to termination, the Department focused on participation by the parents in their services and other circumstances as a condition precedent to again considering reunification.

At the time of the final hearing in November 2018, the children were placed as follows: C.R. was placed in a residential treatment center in Houston, A.R. in a group home in Dallas,[6] and I.R. with a foster family in Dallas.[7] Of the several caseworkers the family had throughout the proceedings, none testified at the final hearing. Instead, the sole witness for the Department was one of its supervisors. E.R. and R.R. testified on their own behalf. At the conclusion of the testimony, the attorney ad litem for the children recommended termination of parental rights and the trial court took the case under advisement.

---

[5] On the Department's motion, the two cases were later consolidated.

[6] Earlier in the case, A.R. was in a group home in San Antonio.

[7] I.R. lived in four foster homes and was moved to Dallas when her most recent foster parents retired.

3

Subsequently, the trial court signed an order terminating E.R. and R.R.'s parental rights for constructively abandoning their children, who had been in the Department's care for not less than six months, after the Department had made reasonable efforts to return the children, the parents had not regularly visited or maintained significant contact with the children, and they had not demonstrated the ability to provide a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (West Supp. 2018). The trial court also found that both parents had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of their children who had been in the Department's care for not less than nine months as a result of the children's removal for abuse or neglect. § 161.001(b)(1)(O) (West Supp. 2018). The trial court further found that termination of parental rights was in the children's best interests. § 161.001(b)(2) (West Supp. 2018). The court then ordered termination of the parental rights of both parents. Both parents seek to overturn that termination order.

APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West 2014). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2014).

4

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In the Interest of E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In the Interest of E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In the Interest of J.F.C.,* 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In the Interest of J.F.C.*, 96 S.W.3d at 266 (citing *In the Interest of C.H.*, 89 S.W.3d at 25). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In the Interest of J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

The clear and convincing standard does not mean that the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In the Interest of T.N.*, 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* Also, the trier of fact, as opposed to the reviewing body, enjoys the right to resolve credibility issues and conflicts within the evidence. *Id.* It may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* at 382-83 (citing *In the Interest of R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ)).

A termination order will be upheld if the evidence is sufficient on any statutory ground relied on by the trial court. *In the Interest of K.C.B.*, 280 S.W.3d 888, 894 (Tex. App.—Amarillo 2009, pet. denied). Although evidence presented may be relevant to both

6

the statutory grounds for termination and best interest finding, each element must be established separately and proof of one element does not relieve the burden of proving the other. *See In the Interest of C.H.*, 89 S.W.3d at 28.

SECTION 161.001(b)(1)(N)

Parental rights may be terminated under subparagraph N if the trial court finds that (1) a parent has constructively abandoned a child who has been in the permanent or temporary conservatorship of the Department for not less than six months, (2) reasonable efforts have been made to return the child, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. *See In re A.S.*, 261 S.W.3d 76, 88-89 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). If there is insufficient evidence of any of the four elements, termination under subparagraph N fails. *In re D.T.*, 34 S.W.3d 625, 633 (Tex. App.—Fort Worth 2000, pet. denied).

ANALYSIS

By issue one of their respective briefs, E.R. and R.R. challenge the legal and factual sufficiency of the evidence to support termination under subparagraph N. The Department, however, offers no argument in response on this ground and relies solely on subparagraph O as the statutory ground supporting termination. Because only one statutory ground is required to support termination, we will evaluate the parties' arguments presented in issue two of their respective briefs pertaining to the legal and factual sufficiency of the evidence to support termination under subparagraph O. In light of our ultimate conclusion, consideration of E.R.'s and R.R.'s first issues challenging termination under subparagraph N is pretermitted. TEX. R. APP. P. 47.1.

7

SECTION 161.001(b)(1)(O)

Parental rights may be terminated under subparagraph O if the Department establishes that a parent:

> failed to comply with the *provisions of a court order* that *specifically established* the actions necessary for the parent to obtain the return of the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child.

(Emphasis added). *See* § 161.001(b)(1)(O). *See also In re J.F.C.*, 96 S.W.3d at 278-79. The Supreme Court has broadened the "abuse or neglect" elements to include risks or threats from the environment in which the child is placed. *See In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013). Although potentially relevant to the best interest issue, termination under subparagraph O does not allow for consideration of excuses for noncompliance with a court order nor does it consider "substantial compliance" to be the same as completion. *See In the Interest of I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.); *In the Interest of M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

ANALYSIS

Paragraph twelve of the trial court's temporary orders for each parent include the following language:

> **THE COURT FINDS AND HEREBY NOTIFIES THE PARENTS THAT EACH OF THE ACTIONS REQUIRED OF THEM BELOW ARE NECESSARY TO OBTAIN THE RETURN OF THE CHILD[REN], AND FAILURE TO FULLY COMPLY WITH THESE ORDERS MAY RESULT IN THE RESTRICITON OR TERMINATION OF PARENTAL RIGHTS.**

8

The next few paragraphs specifically order the parents to comply with "Psychological or Psychiatric Evaluation," "Counseling," "Parenting Classes," and "Drug and Alcohol Assessments and Testing." Finally, paragraph seventeen of the temporary orders requires "Compliance with Service Plan." Under that paragraph, each parent is ordered to "comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit."

Relying on *In the Interest of B.L.R.P.*, 269 S.W.3d 707, 710-11 (Tex. App.—Amarillo 2008, no pet.), and *In the Interest of C.C.*, Nos. 07-15-00185-CV, 07-15-00220-CV, 2015 Tex. App. LEXIS 10137, at *10 (Tex. App.—Amarillo Sept. 29, 2015, no pet.), the parents argue that the language in the orders referenced above is inadequate to support termination. The temporary order at issue in *In the Interest of C.C.* provided as follows:

> [The parent] is ORDERED, pursuant to § 263.106 Texas Family Code, to comply with each requirement set out in the Department's original, *or any amended*, service plan during the pendency of this suit.

As the parents point out, this court found that such language created a fluid order subjecting a parent to amendments to an existing family service plan that could be added at a future date by someone other than a judicial officer. *In the Interest of C.C.*, 2015 Tex. App. LEXIS 10137, at *10.[8] This court held that the Legislature could not have intended

---

[8] We observe that the trial court's *Status Hearing Orders*, *Initial Permanency Hearing Orders*, and *Permanency Hearing Orders* all contain the following fluid language:

> **IT IS ORDERED** that, except as specifically modified by this order or *any subsequent order*, the plan of service for the parents, previously filed with the Court and incorporated herein by reference as if the same were copied verbatim in this order, is **APPROVED** and made an **ORDER** of the Court.

(Emphasis added).

9

such language to be a "court order specifically establish[ing] the actions necessary for the parent to obtain the return of the child." *Id.* Today this court goes a step further to describe such fluid language imposing a potential future non-judicial obligation as being akin to an adhesion contract. An adhesion contract is defined in Texas as a contract in which one party has absolutely no bargaining power or ability to change the contract terms. *In re Media Arts Grp.*, *Inc.*, 116 S.W.3d 900, 911 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Because such fluid language would not likely pass constitutional muster, parental rights, being of constitutional magnitude, should not be subject to termination under subparagraph O where the obligation to comply is one added by the Department and not specifically ordered by the court.

The Department, relying on *In the Interest of K.F.*, 402 S.W.3d 497, 504-05 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), urges that because the appellate record contains the family service plans and court orders that incorporates those plans by reference, E.R. and R.R.'s arguments have no merit. The parent in *In the Interest of K.F.* argued that an existing order in a clerk's record constituted no evidence because it was not admitted at trial and the trial court did not expressly take judicial notice of its prior orders. *Id.* at 504. The court of appeals presumed that the trial court took judicial notice of an order in the clerk's record, without a request to do so having been made and without any announcement by the trial court that it had done so, and found that order was sufficient to comply with the court-order requirement of subparagraph O. *Id.*

The Department argues that even though the service plan and temporary orders were not introduced into evidence in the underlying case, "they were included in the clerk's record, constituting sufficient evidence under subsection (O)." This court has not

held, and does not now hold, that temporary orders must be introduced into evidence to be enforceable. What is required under subparagraph O is the existence of a specific written order, signed and issued by the court, in the appellate record, specifying the task a parent must complete in order to obtain the return of a child. § 160.001(b)(1)(O); *In the Interest of B.L.R.P.*, 269 S.W.3d at 710. Here, the Department argues that the evidence is sufficient to establish that the parents were ordered to perform specific tasks. Sufficiency of the evidence to support the existence of a court order is not the issue. Either a court order specifying the tasks a parent must complete exists or it does not. Either it is signed and contained in the record or it is not. A sufficiency-of-the-evidence review is never directed to the existence of a court order. Instead, it is directed to whether a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations that a parent failed to complete the required tasks itemized in an order of the court.

In the case before us, written orders do exist. The fluid language contained in paragraph seventeen of the temporary orders notwithstanding, those orders do contain specific orders requiring each parent to comply with "Psychological or Psychiatric Evaluation," "Counseling," "Parenting Classes," and "Drug and Alcohol Assessments and Testing." It should be noted, however, that the orders do not require the parents to perform certain tasks specified only in the family service plans, to wit: (1) maintain a source of legal income adequate to support the family for a minimum of six months, (2) maintain visitation and contact with the children as requested by their placements, (3) maintain a safe and stable home, (4) maintain contact with the Department, and (5) attend

and complete life-skills classes to learn money management and home management.[9] Because these five tasks were not specified in any court order, they cannot be used against the parents to terminate their rights under subparagraph O.

The Department maintains that there is "undisputed evidence" that the parents "were court-ordered to complete services" and the filing of family service plans with the court was sufficient to supply the court-order requirement of subparagraph O. We disagree. A court order that orders parental compliance with a then non-existent family service plan is not an order *specifically establishing the actions necessary for the parent to obtain return of the child.* Furthermore, a family service plan signed by the parents alone does not satisfy the court-order requirement of the statute until it has been specifically incorporated into a subsequently signed court order. *See In the Interest of B.L.R.P.*, 269 S.W.3d at 709. Until the Legislature specifies otherwise, this court will continue to require a *court order that specifically* establishes the actions necessary for the parent to obtain the return of the child.

Although we agree with E.R. and R.R. that the fluid language in the court's orders is insufficient to satisfy the court-order requirement of subparagraph O as to certain requirements, we do find that other tasks contained in the family service plans were also itemized in the court's temporary orders, to wit: psychological or psychiatric evaluation, counseling, parenting classes, and drug and alcohol assessments and testing. Regarding those tasks, the Department supervisor testified that E.R. did complete her psychological evaluation and counseling sessions but did not complete parenting classes. Likewise,

---

[9] The Department supervisor offered testimony that the parents failed to maintain stable housing and employment and did not maintain contact with the children or with the Department as required by the family service plans. As those tasks were not specifically included in the court's temporary orders, we do no address them in our analysis under subparagraph O.

R.R. completed his psychological testing and counseling sessions, but he did not complete parenting classes. Also, E.R. failed to show for a court-ordered drug screen on April 2, 2018, and she tested positive for methamphetamine on July 10 and July 31, 2018. R.R. also tested positive for methamphetamine on July 31, 2018. While the parents did later voluntarily request additional drug screening, the supervisor explained that testing is intended to be random in order to avoid any attempt to detox before testing.

During their testimonies, both parents admitted they failed to perform certain tasks but offered excuses for having failed to complete their services. They attributed their positive results for methamphetamine to relatives who had lived with them for a short time. Explanations were also offered for missing parenting classes—E.R. testified she was given the address to a vacant building and through an Internet search, she found the correct location but was told she had to go through her caseworker before starting classes. She testified she contacted her caseworker and never heard anything.[10] While a fact finder does have broad discretion, the current state of the law does not tolerate excuses for noncompliance and accepts nothing short of "completion" of services to avoid termination under subparagraph O. *See In the Interest of I.G.*, 383 S.W.3d at 771. Here, as the trier of fact, the trial court resolved credibility issues and conflicts in the evidence against E.R. and R.R. We find the trial court was presented with clear and convincing evidence sufficient to support a finding that E.R. and R.R. failed to fully comply with itemized tasks contained within a court order required to obtain the return of their children. As such, E.R. and R.R.'s second issues are overruled.

---

[10] E.R. and R.R. had several caseworkers and a temporary caseworker throughout the proceedings. Eventually, the Department supervisor who was the only witness at the final hearing was assigned to the case.

BEST INTEREST

By her third issue, E.R. contends the evidence is legally and factually insufficient to support the trial court's best interest finding.[11]  Again, we disagree.

The Department was required to prove by clear and convincing evidence that termination of E.R.'s parental rights was in the children's best interests.  § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116.  There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship.  *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).  Prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest.  *See* § 263.307(a) (West Supp. 2018).  Section 263.307(b) of the Family Code provides a non-exhaustive list of factors to consider in determining whether a given parent is willing and able to provide the child in question with a safe environment.

To assist courts in making a best interest evaluation, the Supreme Court has set out certain non-exclusive factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72.  Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Id.*  The absence of evidence

---

[11] R.R. does not challenge the trial court's best interest finding.

of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In the Interest of C.H.*, 89 S.W.3d at 28. *See also In the Interest of E.C.R.*, 402 S.W.3d 239 at 249-50. The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In the Interest of K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

ANALYSIS

The family in this case has a history with the Department that spans more than a decade. There was no evidence on the desires of any of the children. All three children have behavioral issues and are on psychotropic medication that requires close monitoring. C.R. has long-term special needs, A.R. has anger issues, and I.R. has learning disabilities. The children reside in different cities in Texas. Due to geographical issues, months had passed since the parents had visitation with their children. Contact by phone was sporadic given the nature of the children's placements and the requirement that visits be supervised.

The parents made one trip to visit A.R. Before I.R. was moved from Amarillo to Dallas, the parents had face-to-face visitation with her; however, after the parents missed

15

numerous visits, the Department cancelled all future visits due to concerns that I.R. became distressed when her parents failed to show. The parents attempted to visit C.R. once but were turned away when the facility was unable to provide a staff member to supervise the visit. According to the parents, they made numerous attempts to contact C.R. The supervisor, however, testified that C.R. had reported difficulties when he attempted to reach his parents by phone.[12]

The evidence showed that E.R. and R.R. had lived in several homes and numerous motels during the pendency of the suit. When R.R. was financially able to pay rent and a security deposit, he was able to acquire a one-year lease for a three-bedroom apartment. He was due to sign the lease within days of the final hearing.

E.R. testified that she was an unemployed, stay-at-home mother but had filled out numerous employment applications. R.R. testified he had been employed by the same company for two years. The children were receiving assistance from Medicaid and the family was on food stamps. E.R. testified that if food stamps were insufficient, she relied on local food pantries to provide for the children.

The Department was concerned with E.R.'s history of methamphetamine use. R.R. also tested positive for methamphetamine. Both parents denied abusing substances and testified the positive tests results were from associating with relatives who used methamphetamines.

The Department was seeking permanence for the children. A.R. and I.R. have lived in California with E.R.'s brother. I.R. has lived in a total of four foster homes in

---

[12] Although a prior hearsay objection to C.R.'s comments was sustained, the same testimony came in later without objection.

Texas. E.R. testified that she was agreeable to having A.R. placed with her brother in California, who was already raising the youngest sibling. E.R. also testified that she had a sister in Amarillo who could care for I.R. Unfortunately, she had no relatives who could take C.R.

Considering the extended history with the Department and concerns about E.R.'s use of methamphetamines, the Department supervisor and the attorney ad litem for the children recommended that termination of E.R. and R.R.'s parental rights was in the children's best interests. Based on a totality of the evidence and the fact finder's right to resolve credibility issues and conflicts within the evidence, we conclude the evidence is both legally and factually sufficient to support the trial court's best interest finding. E.R.'s third issue is overruled.

CONCLUSION

The trial court's order terminating the parental rights of E.R. and R.R. is affirmed.


Patrick A. Pirtle
Justice


Quinn, C.J., concurring.

17