**Affirmed and Opinion filed June 20, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00110-CV

## IN THE INTEREST OF K.F., K.A.F., R.S.H., AND R.G.H., JR., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2011-04832J**

# O P I N I O N

This appeal is from a judgment terminating the parent rights of Alana Harrison to K.F., K.A.F, R.S.H., and R.G.H, Jr.[1] Harrison claims the evidence is legally and factually insufficient to support the trial court's judgment.

---

[1] The trial court's order also terminated the parental rights of alleged father Robert Havies, alleged father Keldan Dontae Frank, and an unknown father, none of whom is a party to this appeal.

## STANDARD OF REVIEW

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish by clear and convincing evidence one or more acts or omissions enumerated under subsection (1) of 161.001 and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code Ann. § 161.001 (West Supp. 2012); *In re J.L.,* 163 S.W.3d 79, 84 (Tex.2005); *In re U.P.,* 105 S.W.3d 222, 229 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). Clear and convincing evidence is that measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re C.H.,* 89 S.W.3d 17, 25–26 (Tex.2002).

In a legal sufficiency review, we consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In the Interest of J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). This means we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible, but we do not disregard undisputed facts, regardless of whether they support the finding. *Id.* If we determine no reasonable factfinder could form a firm belief or conviction the matter to be proven is true, we must conclude the evidence is legally insufficient. *Id.*

In a factual sufficiency review, we give due consideration to evidence the factfinder could reasonably have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have

2

resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction, we must find the evidence is factually insufficient. *Id.*

## THE EVIDENCE

Caseworker Anna Scott testified the Texas Department of Family and Protective Services removed the children from their home after responding to a report of domestic violence in 2011. The investigator found Harrison and Robert Havies, the alleged father of R.S.H and R.G.H., Jr., in the middle of the street having a domestic dispute with the police. Havies has an extensive criminal record, involving drugs, theft, and domestic violence, in Texas and Louisiana. Scott testified that incidents of violence have occurred in front of the children. In 2011, Havies put a gun to Harrison's head in front of the children. Harrison admitted that incident ocurred, but claimed there were no bullets in the gun. Instances of domestic violence in front of the children also occurred between Havies and Harrison's mother and Harrison's sister. Scott testified Havies engaged in conduct that endangered the children's physical and emotional health and their safety.

According to Scott, Harrison has attempted to cover up or protect Havies. When law enforcement responded to a 2010 domestic violence call, Harrison pulled out a knife and threatened to kill herself if Havies were arrested. Scott testified the concern for domestic violence has not been eliminated because Harrison did not attend her domestic violence classes as specified.

Harrison admitted that she allowed the children to see her fighting with Havies. She denied that she tried to stop the arrest of Havies or threatened to kill herself, but admitted to grabbing a knife. Harrison agreed there was domestic

3

violence with Havies, but she was "no longer in that relationship ever since they took my kids from me." She testified she finished her domestic violence classes and would continue to stay away from Havies. Harrison said she had not talked to him throughout the case but did talk to his family.

K.F., Harrison's oldest child, alleged Havies sexually abused her. K.F. made an outcry to Scott and other professionals involved in the case. According to Scott, Harrison refused to believe K.F. and claims that sexual abuse could not have happened because she never left K.H. alone. Scott believes if the children were returned to Harrison, sexual abuse would be a danger.

Harrison testified she did not know about the sexual abuse. She denied ever saying she disbelieved K.F.; she said she "just wanted to get to the bottom of it." Harrison denied receiving a schedule of sexual abuse training classes from the Department. Her recollection is that caseworkers were to give her a schedule after the trial and not "right away."

Harrison testified that she signed the service plan and understood it. The service plan ordered Harrison to stay in touch with the Department, but Scott has not always been able to reach her. There was a consecutive period of at least two or three months that Harrison's phone was not connected. Some certified letters sent to Harrison were unclaimed at the address she provided. The service plan ordered Harrison to cooperate with the Department, but Scott feels she is evasive, confrontational, uncooperative and dishonest. Harrison testified she has been cooperating. The only time she was out of touch with the Department was when her phone was disconnected, during which time the Department had her mother's number.

Harrison began individual counseling and family therapy and completed parenting classes. Scott testified that, despite being given extra time by the judge,

4

Harrison has not completed her individual therapy, has not completed her family therapy, has not obtained stable employment, and is not cooperative with the therapist or with the Department. Harrison sees the same therapist for both individual and family therapy. She admitted that she did not finish her individual and family therapy due to her therapist's schedule.

Harrison admitted that in July she was told to stay in touch with her caseworker. Harrison acknowledged Scott was trying to reach her in August, September, and October to start her therapy. She knew therapy was set up in August but claimed Scott did not give her an authorization code necessary to attend. Harrison admitted that she has known since January 2012 that she needed to complete these services but they still were not completed in January 2013.

Scott testified Harrison is unstable, has not appropriately parented her children and three children are not bonded to her. Harrison is in and out of different relationships and has been dishonest with the Department about her current relationship. According to Scott, this is the same pattern of behavior exhibited when the children initially were removed, except that Havies reports he is no longer in her life.

The date before trial, Harrison told Scott that she had recently started dating her current boyfriend and his mother is caring for her youngest child. Scott is uncertain of the kind of relationship Harrison has with her new boyfriend, Ashton Davis, because Harrison refused to provide that information. Davis's mother would not provide Scott any identifying information because she did not want to be involved. Scott learned only that she is the new caregiver for the baby and her other son, seventeen years old, lives in the home. Scott has been able to reach Harrison recently only at Davis's mother's home and believes Harrison may be

residing there.  At trial, Harrison denied being in any other relationships or having a boyfriend and described Davis as a friend.

Sharone Robinson testified Harrison had been living with her since September 2011.  Harrison pays no rent.  Alice Verbois, the Child Advocate, testified Robinson's home was suitable and an appropriate place for the children to visit Harrison.  Robinson is interested in having R.S.H. and R.G.H., Jr. placed in her home.  Robinson testified Harrison is a good mother and very responsible.  Harrison's interactions with the children were always positive. Robinson thought it was in the best interest of the children to continue to see their mother and that if Harrison's rights were not terminated, she would like them to be placed with either her or Harrison. Robinson testified that Harrison was capable of protecting them from any other domestic violence, "[i]f she's in my residence."  When asked if Harrison would be able to protect the children from a new boyfriend or husband, Robinson answered, "If she got a boyfriend or a husband and was not in my residence then I can't answer for that." Robinson saw the children two or three times a month, at their grandmother's house.  Robinson testified that their placement was a positive one for K.F. and K.A.F.  Robinson has not seen R.S.H. or R.G.H, Jr. since the removal.

Harrison testified her current work hours are from 10:00 a.m. to 1:00 p.m.  If she needs to place the children with a sitter, it would be Robinson's mother.  Harrison testified there was an extra bedroom for the children at Robinson's home.  If the children did not come home with her, Harrison wanted them placed with Robinson.  Harrison testified she was able to provide a stable home environment.

During her investigation, Scott discovered the maternal grandmother, Angela Harrison, was taking care of the new baby. Angela has a history with the Department and has been arrested for prostitution and theft and been involved with

drugs. Both Scott and Verbois testified they had been threatened by Angela. According to Verbois, a threat was made after she conveyed to Harrison that she was recommending termination. Angela denied making any threats.

On August 11, 2011, Harrison tested positive for cocaine. The week before trial, Scott told Harrison that she needed to take a drug test on Friday. Harrison said she would go, but never showed up. The day before trial, Scott again told Harrison she needed to take a drug test that day but Harrison again failed to show up. Scott testified there are other tests Harrison has missed. Harrison testified she completed the substance abuse assessment and did not use drugs. According to Harrison, she has taken all her drug tests except one and the tests were negative.

Harrison has not provided support to either the Department or Shaundra Lomas, the paternal grandmother caring for of K.F. and K.A.F. In the six months prior to the trial, Scott was aware of Harrison having at least five jobs, which Scott did not consider stable employment. Harrison had never filed for child support from Havies. She does not receive public assistance except benefits for R.G.H., Jr., who does not live in her home.

Since the status hearing, Harrison worked for a day care center and for Total Health Care Concept. Harrison had started a new job the week before trial. Harrison admitted she has not brought any clothes or provisions to the Department for the oldest two children. She claimed she brought them food and snacks and was waiting for them to come home to give them clothes and toys. Harrison does not feel it would be in her children's best interest to be adopted and said she would never expose them to a dangerous situation. Harrison testified her youngest, R.G.H, Jr., is more distant but that R.S.H. wants to live with her. Havies testified Harrison is a good mother and it would be in his children's best interest to go home with her.

Verbois recommended all the parents' rights be terminated and K.F. and K.A.F. be placed with Lomas. Verbois testified Harrison failed to comply with the court-ordered services, has not completed individual therapy or family therapy and was not able to verify stable employment. Verbois does not feel the concerns that resulted in removal of the children have been eliminated and agreed that it would impose a danger to the children if they were returned to Harrison. Verbois did not believe Harrison would be able to protect the children or properly care for them. Verbois believes Harrison engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well being and believed it would be in the best interest of the children for Harrison's rights to be terminated. All four children were doing well in their respective placements.

## ANALYSIS

The trial court found that (1) Harrison knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional wellbeing; (2) Harrison engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; (3) Harrison failed to support the children in accordance with her ability; (4) Harrison failed to comply with court-ordered provisions that established the actions necessary for her to obtain the return of the children; and (5) termination was in the best interest of the children. Tex. Fam. Code §§ 161.001(1)(D), (E), (F), (O) and 161.001(2). In four issues, Harrison argues the evidence is legally and factually insufficient to support these findings.

8

### *Judicial Notice of Existence of Court Order*
### *Setting Out Family Service Plan*

Appellant's third issue claims the evidence fails to support a termination finding under section 161.001(O) because the record does not contain a court order specifically establishing the actions necessary for Harrison to obtain the return of the children. Tex. Fam. Code §§ 161.001(1)(O). A termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain the return of the child. *In the Interest of B.L.R.P.*, 269 S.W.3d 707, 709-11 (Tex.App.—Amarillo 2008, no pet.). Appellant asserts that, although an order is in the clerk's record, it constitutes no evidence because it was not admitted at trial and the trial court did not take judicial notice of it. *See In the Interest of C.L.*, 304 S.W.3d 512, 514, 516 (Tex. App.—Waco 2009, no pet.) (holding the trial court did not take judicial notice of prior orders in its file where the Department did not ask the trial court to take judicial notice of them; the court did not announce in open court that it was taking judicial notice; nor did trial court recite in the termination decree that it had taken judicial notice). We presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so. *See In re A.W.B.,* No. 14–11–00926–CV, 2012 WL 1048640, at *3 (Tex.App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem.op.) (presuming trial court took judicial notice of order adopting family service plan). *In the Interest of C.M.C.*, 14-12-00186-CV, 2012 WL 3871359 (Tex. App.—Aug. 30, 2012, pet. denied) (mem. op.).

Appellant claims *In the Interest of A.W.B.* and *In the Interest of C.M.C.* conflict with this Court's decision in *Nat'l Cnty. Mut. Fire Ins. Co. v. Hood*, 693 S.W.2d 638 (Tex. App.—Houston [14th Dist.] 1985, no writ). We disagree. *Hood*

was an appeal from a summary judgment regarding escrowed funds wherein the appellant claimed insufficient evidence. The appellee asserted that, in addition to her affidavits, the trial court had taken judicial notice of court records from her divorce, a lawsuit involving her ex-husband and a garnishment action. We held in *Hood* that a court may not judicially notice records of another court. *Id*. at 639 (citations omitted). A trial court may take judicial notice of the records in its own court filed in the same case, with or without the request of a party. *See Cognata v. Down Hole Injection, Inc.,* 375 S.W.3d 370, 379 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)(presuming the trial court took notice of its contempt order). *Hood* is not inconsistent.

Harrison further argues that *Hood* and Rule 201(e) of the Texas Rules of Evidence required the trial court to notify the parties that it was taking judicial notice of the order and give them an opportunity to challenge its decision, which was not done in this case. In *Hood*, we noted that Rule 201 does not state whether court records can be judicially noticed and said:

> Even if the records could be properly noticed under Rule 201 there is nothing in the record indicating the court did so. There is also no indication that appellant was afforded an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed, as provided in the rule.

*See Hood* at 639*;* Tex. R. Evid. 201(e). *Hood* and Rule 201(e) pertain to *adjudicative facts* rather than the mere existence of a document in a court's record. The trial court in *Hood* needed to know not merely that a divorce petition existed; he needed to know whether appellant had a claim against the escrowed funds. A trial court may take judicial notice of its own files, but it may not take judicial notice of the *truth* of factual statements and allegations contained in the documents contained therein. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The trial court here was not required to ascertain

adjudicative facts. We presume it merely took judicial notice of the existence of the order.[2] Neither *Hood* nor Rule 201(e) applies in this case.

Because we may presume the trial court took judicial notice of its own records, the evidence is legally and factually sufficient to support a finding that the Department proved there is an order that specifically established the actions necessary for Harrison to obtain the return of her children. Issue three is overruled.

In issues one and two, Harrison challenges the legal and factual sufficiency of the evidence to support termination of her parental rights under sections 161.001(1)(D), (E) and (F). Having found sufficient evidence to support the trial court's finding under subsection (O), it is unnecessary to address these issues.

### *Best Interests*

In her final issue, Harrison challenges the legal and factual sufficiency of the evidence to support the trial court's finding termination of her parental rights is in the best interest of K.F., K.A.F., R.S.H., and R.H., Jr. There is a strong presumption that the best interest of the child is served by keeping the child with its natural parent and the burden is on the petitioner to rebut that presumption. *In re U.P.,* 105 S.W.3d at 230.

In deciding whether termination is in the best interest of K.F., K.A.F., R.S.H., and R.H., Jr., we examine several factors for each child, including (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the

---

[2] In order for the trial court to take judicial notice of adjudicative facts noted in its files, the procedures specified in Rule 201(e) may need to be followed. *Rios v. Texas Dep't of Family & Protective Servs.,* No. 03-11-00565-CV, 2012 WL 2989237, at *7 n.5 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.).

parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley v. Adams,* 544 S.W.2d 367, 372 (Tex.1976). This list is not exhaustive, nor is evidence on all nine factors required to support terminating a parent's rights. *Id.* The same evidence of acts or omissions that support termination under section 161.001(1) may be probative in determining a child's best interest. *In re A.A.A.,* 265 S.W.3d 507, 516 (Tex. App.-Houston [1st Dist.] 2008, pet. denied).

The only testimony regarding the desires of the child came from Harrison. She testified that one of the children, R.S.H., wants to live with her. There was no testimony regarding the desires of the other three children. The first factor therefore weighs neither for nor against the trial court's finding.

Harrison is not able to provide for the present and future physical and emotional needs of her children and she continues to pose a present and future emotional and physical danger to the children. There is no evidence that Harrison can provide a stable home or stable employment. Harrison has not attempted to obtain child support from any of the alleged fathers of her children. There was testimony that she is not bonded to three of her children. She continued in a relationship that exposed the children to domestic violence. Harrison has left the baby in Angela's care without informing the Department. There was evidence from which the trial court could find Harrison has been untruthful with the Department regarding her current boyfriend and living arrangements. Thus, the second and third factors weigh in favor of the trial court's finding.

Robinson's testimony provides some evidence that Harrison is a good parent. Robinson, however, did not know whether Harrison could protect her children unless living in Robinson's home. Havies also testified that Harrison is a good mother, but the trial court could have weighed Havies' credibility in determining the weight to be given his opinion. The testimony of Scott and Verbois contradicts those opinions. The evidence regarding Harrison's parenting skills establishes that the fourth factor weighs in favor of the trial court's finding.

Harrison was given an extension of time but has not complied with her current plan of service. Therefore, the fifth factor also weighs in favor of the trial court's finding.

All four children are doing well in their respective placements. The only home Harrison can provide is a room in Robinson's home. The sixth and seventh factors weigh in favor of the trial court's finding.

Finally, we consider the acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate and any excuses for those acts or omissions. Although given an extension of time to do so, Harrison failed to complete court-ordered services to secure the return of her children. Her excuse was that Scott failed to provide an authorization code. The trial court, as the factfinder, was entitled to believe Scott that Harrison could not be reached during that time. There was testimony Harrison did not believe her daughter was sexually abused and Harrison failed to attend sexual abuse classes to help her daughter. Her excuse was that those suggesting classes did not say to take them "right away." Harrison wielded a knife when confronted by officers trying to arrest Havies. Harrison excused Havies' putting a gun to her head because there were no bullets. The eighth and ninth factors also weigh in favor of the trial court's finding.

After reviewing this evidence, we conclude the trial court's determination that terminating appellant's parental rights is in the best interest of K.F., K.A.F., R.S.H., and R.H., Jr., is supported by legally and factually sufficient evidence. We overrule appellant's fourth issue.

## CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/    Martha Hill Jamison
Justice


Panel consists of Justices Boyce, Jamison, and Busby.