

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-18-00635-CV

**IN THE INTEREST OF E.F.**, J.P.V., V.J.V., and R.J.V., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-01049
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:    Beth Watkins, Justice
Dissenting Opinion by: Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: May 22, 2019

I respectfully dissent. I would reverse and render an order denying the Department's request for termination because there is legally insufficient evidence that termination is in the children's best interest. I begin, however, with expressing my concerns about the proceedings in this case.

### CONCERNING PROCEEDINGS IN THIS CASE

I am encouraged by the shift in making mental health awareness a priority by our two higher courts[2] and state legislature. But I express my concerns to emphasize our work as members

---

[1] The Honorable Peter Sakai is the presiding judge of the 225th District Court, Bexar County, Texas.  The order of termination was signed by the Honorable Charles E. Montemayor, Associate Judge.
[2] *See* TEX. JUD. COMM. ON MENTAL HEALTH – *About Us Commissioners*, http://texasjcmh.gov/about-us/comissioners (last visited May 9, 2019) (noting the commission is co-chaired by Justice Jeff Brown and Judge Barbara Hervey).

of the judiciary and society is far from over when it comes to eliminating the innate bias against

those who are mentally ill.

**A. Although perhaps unintentional, the record discloses an underlying, innate bias against those with mental illness.**

As shown by the record, appellant has been medically diagnosed with bipolar disorder that

at times causes her to pull out her hair. She explained this condition leaves her with bald spots, so

she shaves her head. It is undisputed appellant proactively and effectively manages her condition

with medication, counseling, and a therapy dog. But in explaining its decision to terminate

appellant's parental rights, the trial court brought attention to appellant's bipolar disorder:

> I think the one thing to keep in mind here is there's a lot of things in the law that are significant here. There's a case: In RE ALM, 300 S.W.3d 914[3] that has a quote I think is pretty important.
> "The needier the . . . child, the more able the parent must be."

The trial court then noted appellant's bipolar disorder and further stated:

> There's nothing wrong with that, and the disability she receives and she's managing it. But then ***it's hard to say that three children should be part of this*** when they've been through so much.
> The shaving of the head. I understand the hair thing, but these things . . . affect . . . children. I'm looking at [V.J.V.]. And again, I'm reading from the CASA report.
> "When his mother shaved her head, it deeply affected him. He could not participate for the first 20 minutes of the visit, because he could not stop crying."
> That's the CASA report. These things have [e]ffects on children and best interest. So one would say that you don't have permanency for these children, so why discontinue the relationship with mother.
> Well, because ***I don't know that there will be progression or see any hope for progression***. And I have, you know, a 14, 12, and nine year old, and I'm not going to give up on them. (emphasis added).

However, the Department's caseworker Dietra Marquez testified one child takes

psychotropic medication but the children have no "specialized medical needs," and there is no

---

[3] *In re A.L.M.* involved termination of a parent's rights based on "a parent's mental illness or deficiency and the resulting inability to meet the child's mental, physical, and emotional needs." 300 S.W.3d 914, 915 (Tex. App.— Texarkana 2009, no pet.) (citing TEX. FAM. CODE § 161.003).

evidence showing appellant is not "able" as a parent. It is undisputed appellant made significant strides to manage her bipolar disorder, and her visits with her children "go well" and are "appropriate." The trial court's remarks suggest that merely having bipolar disorder and a shaved head makes a parent less able, makes children "needier," or both, and so much so that depriving a parent and her children of a relationship is warranted.

Marquez also testified at trial:

> So my concern would be if something were to happen to the dog, especially because the dog is often left off of the leash when she's on her property, then what happens next? If the dog were to be hit by a car, would she still be able to perform these daily functions and would she be able to care for her children in the absence of a dog?

The Department reiterates this speculative concern in its argument on appeal. The trial court's comments and the Department's lack of understanding raise serious concerns and are inconsistent with the should-be-intended goal of reunification. More importantly, however, innate biases might have played a role in the termination of the appellant's parental rights. *See* Nicole E. Negowetti, *Navigating the Pitfalls of Implicit Bias: A Cognitive Science Primer for Civil Litigators*, 4 ST. MARY'S J. LEGAL MAL. & ETHICS 278, 284 (2014) (stating judges are human beings susceptible to having implicit biases).

When a parent with a diagnosed mental health condition undisputedly manages her condition proactively and effectively, the mere existence of the mental health diagnosis should play no role in a trial court's decision to terminate a parent's rights. *In re G.C.*, No. 02-17-00259-CV, 2018 WL 547784, at *20 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (mem. op.) ("[M]ental illness alone is not a basis for terminating the parent-child relationship"). Of course, if a parent does not accept her diagnosis or does not seek treatment, such a refusal may be considered in determining whether the parent–child relationship should be terminated. *See, e.g.*, TEX. FAM. CODE 161.003. Here, however, the trial court ignored undisputed evidence establishing appellant

manages her condition proactively and effectively and it expressly relied on appellant's mental health diagnosis as a reason for terminating her parental rights.

**B. The trial court should not have relied on facts not in evidence.**

It is gravely concerning that—on the record—the trial court expressly relied on facts not in evidence to terminate appellant's parental rights. The trial court directly read from a CASA report, revealing the trial court considered the statements in the filings for their truth. However, this court has repeatedly stated, and the majority correctly states again, a trial court "may not take judicial notice of the *truth* of the allegations in its records." *In re J.E.H.*, 384 S.W.3d 864, 869 (Tex. App.—San Antonio 2012, no pet.). By violating this rule, the trial court denied appellant her clearly established due process rights and impaired the integrity of the court's truth-seeking function. *See* TEX. R. EVID. 102; *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

When reviewing the sufficiency of the evidence, appellate courts indulge a legal fiction that the factfinder actually considered only the evidence admitted at trial—even when, as here, the record affirmatively shows the factfinder improperly considered facts not in evidence. *Cf. In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984) (per curiam) (precluding courts of appeals from "look[ing] to any comments that the judge may have made at the conclusion of a bench trial" as forming a basis for the judgment). As I view the record, the only way the trial court could have reasonably reached its decision to terminate appellant's parental rights is by improperly considering the contents of court filings for their truth. It is particularly concerning in this case because other factual allegations in court filings were contradicted by undisputed evidence at trial.

The trial court's express reliance on facts not in evidence underscores the need for better efforts to protect parents' due process rights. In some termination proceedings, such as the underlying case, the trial court must consider evidence and make factfindings on various pretrial matters that significantly overlap with disputed fact issues to be decided at trial. Understandably

so, it is challenging for a trial court that has made pretrial factual determinations to disregard all prior proceedings at a trial on the merits. But when a trial court acts as a factfinder at trial and at pretrial hearings involving related factual disputes, the trial court should make extraordinary efforts to consider only the evidence admitted at trial. This challenge was not met in this case.

**C. The Department's strongest evidence at trial was inadmissible hearsay.**

The strongest evidence presented at trial was that appellant (1) on one occasion a year and a half before trial, left the children unattended at the Haven for Hope shelter; and (2) tested positive for drugs in March 2018. Without the evidence of these two facts, there would be no question that the evidence is legally insufficient to permanently sever the parent–child relationship between appellant and her children.

The only evidence about the children being dirty and urinating in cups at Haven for Hope was the testimony of caseworker Marquez. Marquez's testimony was not based on personal knowledge, but on statements contained in an affidavit sworn to by a different caseworker, Boryana Trautmann. Trautmann's affidavit states "shelter staff informed" her of many of the facts included in the affidavit. The record appears to show Marquez's testimony was hearsay, if not double hearsay. *See* TEX. R. EVID. 801–03. Trial counsel did not object to Marquez's testimony.

During direct examination, Marquez testified appellant's only drug test, a "UA," came back negative, but appellant had missed a random drug test, and hair follicle testing was unavailable because appellant had shaved her head. On cross-examination, appellant's trial counsel elicited Marquez's testimony about the positive hair follicle drug test. Although Marquez's testimony was responsive to the question trial counsel had asked, she did not explain the results and trial counsel did not object to the testimony being hearsay. *See id.*; *In re K.C.P.*, 142 S.W.3d 574, 580 (Tex. App.—Texarkana 2004, no pet.).

**D. Conclusion**

An extraordinary number of parental termination cases are filed in counties in this court's jurisdiction. These cases are not easy for parents, children, the Department, attorneys, or the courts because these cases involve fundamental rights of parents and important public concerns for child welfare. Although our primary concern is the children's welfare, parental termination cases are not made easier when innate bias negatively influences how some parents are treated in court. Looming deadlines and overcrowded dockets cannot justify shortcuts that undermine the truth-seeking function of our courts. Protecting this truth-seeking function is just as crucial in cases involving a parent who has a mental illness.

**INSUFFICIENT EVIDENCE SHOWS TERMINATION IS IN THE CHILDREN'S BEST INTEREST**

I generally agree with the majority's recitation of the applicable law. However, I provide additional fundamental principles. First, the standard of review precludes us from disregarding undisputed evidence contrary to the trial court's findings; doing so "could skew the analysis of whether there is clear and convincing evidence." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). A factfinder "may not disregard uncontroverted evidence." W. Wendell Hall, *Standards of Review in Texas*, 29 ST. MARY'S L.J. 351, 482 (1998). Similarly, in reviewing the legal sufficiency of the evidence, we "must consider undisputed or uncontradicted evidence" and cannot "disregard the undisputed evidence." *Id.* (internal quotation marks omitted).

Second, in parts of its analysis, the majority focuses on "conservatorship." But the Department's burden was not to simply prove appellant should not have custody of her children; its heightened burden was to prove, by clear and convincing evidence, appellant should not have any relationship with her children whatsoever. *See J.A.J.*, 243 S.W.3d at 614–17 (distinguishing conservatorship from termination). The evidence must therefore permit a factfinder to reasonably

form a firm conviction or belief that appellant should no longer be in the children's lives as their mother, not merely that appellant should not have custody. *See id.* at 616.

Third, "[t]ermination is a drastic remedy and is of such weight and gravity," that "termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014); *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). We must strictly scrutinize whether the evidence is clear and convincing in support of termination. *K.M.L.*, 443 S.W.3d at 112. Evidence can be "too vague to constitute clear and convincing evidence" to terminate parental rights. *See In re C.C., III*, 253 S.W.3d 888, 894 (Tex. App.—Dallas 2008, no pet.); *see, e.g.*, *In re K.M.J.*, No. 04-18-00727-CV, 2019 WL 1459565, at *7–8 (Tex. App.—San Antonio Apr. 3, 2019, no pet. h.) (mem. op.) (holding testimony offered without any factual support was conclusory). Additionally, we cannot rely on evidence that requires speculation or piling inferences upon inferences. *See K.M.J.*, 2019 WL 1459565, at *7–8; *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 92 (Tex. App.—San Antonio 2003, pet. denied).

The majority primarily relies on the Haven for Hope incident, appellant's drug use, and the housing issue. But, as explained below, the actual testimony is too vague and impermissibly requires speculation and piling inferences upon inferences. I address each of these concerns in turn, and then consider the evidence of the *Holley v. Adams* factors. 544 S.W.2d 367 (Tex. 1976).

## A. The Haven for Hope Incident

*The evidence.* Marquez testified the reason the children came into the Department's care was because the children were left at Haven for Hope, and they were "very dirty." According to Marquez, the children "basically were hiding in their room, because they would get locked out and [appellant] wasn't around. They were urinating in cups so they would not have to leave the room. They attempted to call [appellant], and no one was able to reach her." Appellant testified she had left the children at Haven for Hope to go to work, but did not make it back in time because her car

broke down. Marquez admitted on cross-examination that the Haven for Hope incident occurred "during the investigation stage," so she "did not know whether or not" appellant's explanation was true. She did not dispute appellant's explanation or provide a basis for discrediting appellant's explanation. Thus, appellant's explanation is undisputed.

*Analysis*. Marquez's testimony is vague and does not support the majority's suggestion that appellant neglected the children. Marquez testified "the children" came into care because "the children" were left alone. She testified only that appellant "wasn't around," but provided no basis to believe she intended to exclude E.F., who was seventeen years old at the time. Thus, assuming the trial court credited this testimony, appellant left the younger children who were thirteen, eleven, and eight with E.F., who was seventeen at the time. No evidence suggests appellant knew E.F. was unable to adequately supervise the three younger children while appellant was at work. Thus, a factfinder could not reasonably conclude appellant neglected the children by leaving them entirely unsupervised or anticipated the children would get "very dirty" and start urinating in cups.

The Department presented no evidence showing the length of time the children were left alone. Appellant's undisputed explanation was that she went to work, her car broke down, and she did not "make it back on time." The majority states the circumstantial evidence of the children being "very dirty" and urinating in cups "suggests" the children were alone for "a significant amount of time." But a factfinder would be forced to speculate as to what length of time "a significant amount of time" was. No evidence provides a basis to suggest the children were left alone for such a long period of time that appellant's explanation could not be credible. Instead, *Holley* requires us to consider the parent's explanations for their acts and omissions, and our

standard of review precludes us from disregarding undisputed evidence. *J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371–72.[4]

In its analysis of the evidence supporting the trial court's finding of a ground to terminate appellant's parental rights, the majority characterizes this evidence as showing "the children were removed for neglect." But while the evidence shows the basis for removal was alleged neglect under subsection (O), the evidence does not show—for purposes of the best interest finding— appellant actually neglected the children or left them alone for an unreasonably long period of time under the circumstances. *Cf. Garcia v. State*, 367 S.W.3d 683, 689 (Tex. Crim. App. 2012) (holding evidence insufficient to support endangerment of a child when "[n]o evidence show[ed] how long appellant had been outside with the child" in inclement weather). Because Marquez did not dispute appellant's explanation, and no evidence indicates appellant actually neglected the children, the substantive law and our standard of review preclude us from weighing the Haven for Hope incident in favor of termination.

**B. Drug Use**

*The evidence.* Marquez testified appellant had a positive hair follicle drug test in March 2018. Marquez did not testify about the particulars of the results. But, as noted above, during cross-examination, appellant answered a question that assumed the results were positive "for meth" without correcting the assumption. Marquez also testified she saw a plate and a "makeshift pipe" in "a closet" in appellant's apartment, the plate had "distinctive lines," and the pipe looked like it could be used for smoking. She further testified appellant had missed one random drug test, and

---

[4] *See, e.g.*, *In re A.G.K.*, No. 04-16-00315-CV, 2016 WL 6775590, at *11 (Tex. App.—San Antonio Nov. 16, 2016, no pet.) (mem. op.) (excusing parents' conduct when undisputed evidence provided a reasonable explanation); *In re C.T.E.*, 95 S.W.3d 462, 464 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting appellant gave "undisputed explanation for the assault . . . that it resulted from an argument he had with the children's mother who he was trying to prevent from going into a drug place").

had "shaved her head so no further hair follicles could be done." Appellant denied using drugs and otherwise provided explanations.

Marquez and appellant both testified appellant was in an outpatient drug program. Appellant testified without contradiction that her last appointment for the program was the same day as trial. Marquez testified she was aware appellant was being drug tested as part of her outpatient program, she was aware appellant's drug test two weeks before was negative, and Marquez sent appellant to have UA tests, but Marquez did not know the results of those tests.

*Analysis*. Based on the positive drug test in March 2018, a factfinder reasonably could have discredited appellant's testimony and explanations about the results and other suggestive evidence of any drug use. However, while the trial court found appellant used a controlled substance in a manner that endangered the children, it is undisputed the children were removed from appellant in 2017. There is no evidence showing appellant appeared to be on drugs during any of her visits with the children, or did anything to endanger the children during those visits. The undisputed evidence establishes appellant's visits "go well" and are "appropriate," and the Department allowed appellant to continue visiting the children after March 2018.

There is also no evidence showing appellant used drugs before the children were removed or in the children's presence. Marquez's testimony about the plate and the pipe is suggestive, but there was no evidence that "testing was conducted to confirm that [the lines] …[were] in fact an illegal drug." *See K.M.J.*, 2019 WL 1459565, at *1. Additionally, Marquez did not give the date she found the pipe and plate in appellant's apartment. Without this date, a factfinder would have to speculate as to whether the evidence of the pipe and plate was duplicative of the evidence showing appellant used drugs in March 2018 or the missed drug test sometime after July. Testimony that requires a factfinder to engage in such speculation is not competent evidence of probative force. *See id.*

Our standard of review also precludes us from disregarding the undisputed evidence that appellant was being drug tested in her outpatient program, had a negative drug test, and the Department made no efforts to determine whether appellant's other drug tests were positive or negative. *See J.F.C.*, 96 S.W.3d at 266. The majority notes appellant shaved her head, the Department was then unable to conduct hair follicle tests, and appellant "tested negative, but the test was a urinalysis test as opposed to a hair follicle test." The majority suggests hair follicle tests are more effective than urinalysis tests, but no evidence was admitted at trial to support this suggestion. Furthermore, this suggestion gives undue weight to appellant shaving her head because Marquez admitted she sent appellant to have UA tests, but never determined the results of those tests. The majority's suggestion that urinalysis tests were inadequate is not based on the evidence. And, while the majority characterizes the evidence as showing appellant "failed to complete" her outpatient program, the undisputed fact we cannot disregard is that appellant's last appointment to complete her outpatient program was the same day as trial. *See id.*

Certainly, the evidence of appellant's drug use weighs against appellant. But this is not a case where the evidence shows the parent is drug-addicted or had used drugs around the children or in a manner that endangered them. Thus, given Marquez's admission that she did not determine the result of any of appellant's UA test results, appellant's negative drug test two weeks before trial, and the undisputed evidence that appellant had only one remaining appointment for her outpatient drug program, the evidence of appellant's drug use weighs against appellant moderately, but not heavily. *See K.M.J.*, 2019 WL 1459565, at *7.

## C. Stable Housing

*The evidence.* Marissa Mueller, a case manager for SAMMinistries' housing program, testified appellant had "been given some lease violations and a 30-day notice to vacate" by the end of the month, and appellant "received violations in regards to her dog, and also having

unauthorized tenants." Mueller testified, "We are rehousing her in another complex." She also testified appellant had "permanent supportive housing" assistance that provides "full rent and utilities while [appellant's] in the program." Mueller did not testify about any of the program's requirements. She testified she did not "ever find out who the unauthorized tenants were." Marquez testified about her observations of appellant's apartment, but the trial court sustained an objection to that testimony. Appellant explained she collects discarded clothing when other tenants move out, she keeps the clothes for the children, and a woman named Cindy helps her clean the apartment and dishes.

    *Analysis*. The majority states, "Despite Mother's contention, . . . Ms. Marquez found men's clothing, including underwear, in the apartment . . . . Ms. Marquez also testified it appeared as if people had been sleeping in the twin beds designated for the children . . . The beds were pushed together." But the trial court excluded all of this evidence:

    Q And to your knowledge, does mom have a roommate?

    A She states that she does not. However, there was men's clothing found in one of the rooms. It looked like people had been sleeping in the beds that were designated for the children. The twin beds were pushed together –

    MS. HANSON: Objection, nonresponsive.

    THE COURT: Just be careful. It's getting a little narrative. ***Sustained***.

(emphasis added). This court has held that in a bench trial, "testimony . . . not admitted as evidence before the trial court . . . cannot be considered in our sufficiency review." *EZ Auto, L.L.C. v. H.M. Jr. Auto Sales*, No. 04-01-00820-CV, 2002 WL 1758315, at *4 (Tex. App.—San Antonio July 31, 2002, no pet.) (mem. op.) (op. on reh'g).

    Without this evidence, the only evidence raising a concern about appellant's housing is that appellant received a "notice to vacate" due to lease violations of having unauthorized tenants and her therapy dog. The majority states, "A representative for SAMMinistries testified Mother was

being evicted from the apartment for, among other things, having unauthorized tenants in the apartment . . . . the eviction was imminent at the time of trial." The majority also states there is a "pending eviction," suggesting there is a pending forcible detainer proceeding or a writ of possession has been issued. *See* BLACK'S LAW DICTIONARY 594 (8th ed. 2006) ("eviction" *n.*). There is no evidence of a "pending eviction." And, although the majority states an "eviction was imminent," the undisputed evidence establishes SAMMinistries was rehousing appellant before the deadline for her to vacate.

Mueller testified appellant received a "notice to vacate" for having a dog and "unauthorized tenants." This is evidence of *alleged* lease violations, not evidence of *actual* lease violations. Appellant's lease was not admitted into evidence. No evidence provided any factual details underlying the allegations of lease violations for "unauthorized tenants." These vague allegations would be insufficient to support terminating appellant's lease under a "preponderance of the evidence" standard. *See Moon v. Spring Creek Apts.*, 11 S.W.3d 427, 433–34 (Tex. App.—Texarkana 2000, no pet.). Thus, these vague allegations are necessarily insufficient to support terminating appellant's parental rights under a "clear and convincing evidence" standard. *See In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) ("[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.").

There is no evidence showing the actual basis for the notice to vacate. Although the evidence supports a reasonable inference that the notice to vacate was based on the stated lease violations because Mueller testified there were no other violations, it is unclear whether appellant received the notice solely for having a therapy dog, solely for having unauthorized tenants, or a combination of both. The majority states "the evidence suggest she has issues staying within the mandates of her housing program." But because Mueller's testimony is so vague, I would not go

so far as to suggest appellant cannot maintain stable housing because her disability required her to have a therapy dog, or to suggest appellant displayed a propensity for committing lease violations.

Furthermore, our standard of review precludes us from disregarding the undisputed evidence that appellant has permanent housing assistance through a SAMMinistries program that pays her entire rent and all utilities. *See J.F.C.*, 96 S.W.3d at 266. The majority suggests appellant is at risk of losing her housing assistance through SAMMinistries, stating appellant "has issues with following ***program*** rules," "will need to follow ***program*** requirements to maintain her housing," and "has issues staying within the mandates of her housing ***program***, which prohibited unauthorized tenants" (emphasis added). But Mueller never testified about the requirements of the SAMMinistries housing program. She testified appellant had "lease violations," providing circumstantial evidence about the ***lease*** requirements. Without any evidence explaining the program or giving further details, the evidence permits an equally probable inference that SAMMinistries simply chose to rehouse appellant rather than dispute the notice to vacate. Mueller's testimony therefore requires speculation that appellant "has issues" with following lease or program requirements. *See K.M.J.*, 2019 WL 1459565, at *7.

Because appellant is moving to a new apartment complex, the factor of "stable housing" technically weighs against appellant. But no evidence shows appellant's new apartment would be inappropriate for the children, and undisputed evidence establishes SAMMinistries was continuing to provide appellant with housing assistance, and fully pay her rent and utilities. Thus, as a pure technicality, the "stable housing" factor weighs in favor of termination because appellant was about to move from one apartment to another. But given the lack of factual detail in Mueller's testimony, and the undisputed evidence that appellant was to continue receiving full housing assistance through SAMMinistries after she moved, the weight of this factor is very slight.

**D. Children's Desires**

*The evidence.* Marquez testified J.P.V. "requested to stay in care" and E.F. "stated that she is willing to stay in the SIL program." Marquez did not testify what the "SIL program" is.

*Analysis.* The only evidence relevant to the children's desires is Marquez's above-quoted statements. There is no evidence showing when E.F. and J.P.V. expressed these desires. This evidence is also mitigated by the undisputed evidence that, although the children were living at the Haven for Hope shelter when they were removed, at the time of trial, appellant had permanent housing assistance and was living in an apartment. *See In re J.I.T.*, No. 01-17-00988-CV, 2018 WL 3131158, at *17 (Tex. App.—Houston [1st Dist.] June 27, 2018, pet. denied) (mem. op.) (considering undisputed facts that mitigate evidence in support of a finding). And, there is no evidence of the other two children's desires, rendering Marquez's testimony insufficient to support this factor. *In re K.F.*, 402 S.W.3d 497, 506 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding this factor does not weigh in favor of termination when evidence shows only one child's desires, but not others).

We also cannot disregard the undisputed evidence that the children have a good relationship with appellant and appellant's visits with the children "do go well" and are "appropriate." And while the evidence of E.F.'s and J.P.V.'s desires to remain at their current placements relates to their primary residence, an issue of managing conservatorship, there is no evidence showing they had no desire to have any relationship with appellant, which is the relevant inquiry. *See J.A.J.*, 243 S.W.3d at 614–17. This factor does not weigh in favor of termination. *See id.*; *M.C.*, 482 S.W.3d at 688–89; *K.F.*, 402 S.W.3d at 506.

**E. Current and Future Emotional and Physical Needs**

There is no evidence showing the children have any unique emotional or physical needs. *See Holley*, 544 S.W.2d at 371–72. Instead, the Department's caseworker testified the children

have no specialized medical needs, but J.P.V. is taking a single prescription. This factor does not weigh in favor of termination.

## F. Current and Future Emotional and Physical Danger

Notably, there is a total absence of evidence that appellant ever physically or emotionally abused the children or subjected them to any physical or emotional danger. There is also no evidence that allowing appellant access to the children would place the children in emotional and physical danger. Although there is evidence suggesting appellant had used drugs several months before trial, there is no evidence appellant ever used drugs before the children were removed, attended a visit under the influence of drugs, or was using drugs at the time of trial. This factor does not weigh in favor of termination. *See id.*

## G. Parental Abilities of the Individuals Seeking Custody

There is no evidence that anyone other than appellant and the Department was seeking custody of the children. *See id.* Marquez expressed no concern about appellant's parental abilities. Appellant testified she had a good relationship with the children, and she described the children's relationship with one another and what they each wanted to be when they grew up. And while there is evidence showing the children's needs were being met in foster care, there is no evidence showing the children's needs would not be met in appellant's care. Our standard of review precludes us from disregarding undisputed evidence that in the year and half before trial, the Department had not yet found possible adoptive parents for the children, and appellant's visits with the children "go well" and are "appropriate." *See id.* Although Marquez testified appellant arrived late, she provided no details of how often appellant arrived late, or whether appellant was two minutes late or an hour late. Given the vagueness of Marquez's testimony and undisputed evidence favoring appellant, this factor weighs slightly against termination.

**H. Programs Available to Assist Appellant**

Marquez testified appellant did not complete her parenting, domestic violence, and anger management courses, and the majority weighs this against appellant. While this evidence might support a finding of a ground for termination under subsection (O) for failing to comply with court-ordered provisions of a service plan, there is no evidence showing appellant lacked parenting skills, engaged in domestic violence in any of her relationships, or had anger management issues. I respectfully disagree with the majority's suggestion that it is against the children's best interest if a parent has yet to complete courses, which the parent has shown no signs of needing.

What is more significant is that undisputed evidence establishes appellant successfully took advantage of programs she *did* need. The evidence shows appellant had used drugs several months before trial, was living at the Haven for Hope shelter when the children were removed, and has bipolar disorder. But undisputed evidence establishes appellant proactively and effectively manages her bipolar disorder with medication, attends counseling, and has a therapy dog; appellant sought and was approved for disability income; appellant had successfully engaged in outpatient drug treatment up until the time of trial and had her last outpatient drug appointment the same day as trial; and appellant obtained permanent housing assistance through SAMMinistries. *See J.F.C.*, 96 S.W.3d at 266. Because undisputed evidence shows progression and appellant successfully took advantage of programs available to assist her where she actually needed improvement, this factor weighs moderately against termination. *See Holley*, 544 S.W.2d at 371–72.

**I. Plans for the Children**

Appellant testified she wanted the children to have her as their mother because she was "the only one they have." The Department's plans for the children are to keep J.P.V. in a group foster home, and to continue seeking foster–adopt homes for the two younger children. There was no evidence that the Department found foster parents willing to adopt any of the children, or that

finding foster parents was even likely. Undisputed evidence establishes the Department did not find potential adoptive families for any of the children. *See J.F.C.*, 96 S.W.3d at 266. Because the evidence establishes the Department sought to deprive the children of a relationship WITH the only parent they would likely ever have, and keep the children in foster care without parents until they aged out, this factor weighs slightly against termination.

## J. Another Factor—Financial Support

It is undisputed appellant has an associate's degree in accounting, has been a licensed tax preparer for several years, renews her license every year, has several clients, earns between $350 to $400 a week in income, has no rent or utilities to pay, and gave money to the children during visits. This undisputed evidence shows appellant has the ability and willingness to provide financial support to the children, whether they are in her care or in foster care. *See J.I.T.*, 2018 WL 3131158, at *18 (considering undisputed evidence of parent's employment and education weighing against termination). This factor weighs slightly against termination. *See id.*

## K. Conclusion

There is no evidence of several of the most significant *Holley* factors. No evidence shows the children's desires as to the specific issue of termination. There is no evidence of actual neglect. There is no evidence of abuse. There is no evidence of endangerment. There is no evidence that appellant could not meet the children's needs. Appellant's parental rights appear to have been terminated because:

- Appellant went to work on Mother's Day in 2017, her car broke down, and as a result, her children were left alone for some unspecified amount of time, became "very dirty," and urinated in cups;

- the Department removed the children the following day based on a concern of neglect and appellant was required to comply with her family service plan requirements;

- after the children were removed, appellant used methamphetamine in March 2018, and likely used drugs sometime after July 2018, and violated her family service plan by not fully completing all of her courses;

- Appellant got a therapy dog that, together with a dispute with her landlord over whether she had an unauthorized tenant, caused her housing assistance program to relocate her to a different apartment; and

- Appellant has bipolar disorder and shaved her head.

Considering the heightened standard of proof required to protect appellant's constitutional rights, and the severe lack of evidence that is not conclusory, vague, or speculative, I would hold that the evidence does not permit a reasonable factfinder to form a firm belief or conviction that termination of the parent–child relationship between appellant and her children is in the children's best interest. Even without the evidence against the finding, given the heightened standard of proof designed to protect parent's fundamental rights, this evidence is legally insufficient to support permanently severing a parent's relationship with her children. *See J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371–72.

And, the undisputed evidence establishes the children are being deprived of their mother, who they have known their entire lives and with whom they have a good relationship. The children are facing the prospect of spending up to a decade in foster care without ever being adopted, and losing the financial support their mother is willing and able to provide.

The fact the children's mother has bipolar disorder is of no consequence here.

Because there is legally insufficient evidence showing termination of appellant's parental rights is in the children's best interest, I would reverse and render an order denying the Department's request for termination. I would not disturb the order appointing the Department as the children's managing conservator. Because the majority affirms the order of termination, I respectfully dissent.

Luz Elena D. Chapa, Justice