

## NUMBER 13-14-00325-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

### IN THE INTEREST OF D.P., A CHILD

### On appeal from the 135th District Court
### of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

J.C. ("Mother") appeals the termination of her parental rights to her daughter, D.P. ("Daughter").[1]  By two issues, Mother asserts that (1) the evidence is insufficient to support the trial court's termination order; and (2) the trial court's termination order is void because it does not conform to the pleadings or the evidence presented at trial.  We affirm.

---

[1] We will uses aliases throughout this opinion in order to protect the minor's identity.  *See* TEX. R. APP. P. 9.8.

## I. BACKGROUND

### A. Procedural History

In March 2012, the Texas Department of Family and Protective Services (the Department) filed suit against Mother and A.P.[2] related to the protection, conservatorship of, and parental rights over Daughter, who was three years old at the time. In its petition, the Department alleged that Mother (1) knowingly placed or knowingly allowed Daughter to remain in conditions or surroundings which endangered Daughter's physical or emotional well-being; (2) engaged in conduct or knowingly placed Daughter with persons who engaged in conduct which endangered Daughter's physical or emotional well-being; (3) failed to support Daughter the year prior to the filing of the Department's petition; (4) executed an unrevoked and irrevocable affidavit of relinquishment of parental rights; (5) had her parental rights terminated with respect to other children for violations of the Texas Family Code; (6) constructively abandoned Daughter; (7) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Daughter; and (8) used a controlled substance in a manner that endangered Daughter. Additionally, the Department sought a finding from the trial court of aggravated circumstances. *See* TEX. FAM. CODE ANN. § 262.2015 (West, Westlaw through 2013 3d C.S.) (allowing the trial court to waive the requirements of a service plan and making of reasonable efforts to return the daughter to a parent upon a finding that the parent has subjected the daughter to aggravated circumstances).[3]

---

[2] According to the record, A.P. is Daughter's biological father. His parental rights were terminated, and he is not a party to this appeal.

[3] In this case, the Department sought a finding of aggravated circumstances on grounds that Mother's parental rights with regard to other children were involuntarily terminated based on a finding that the parent's conduct violated family code section 161.001(1)(D) or (E) or a substantially equivalent provision of another's state law. *See* TEX. FAM. CODE ANN. § 262.2015(b)(5) (West, Westlaw through 2013 3d C.S.).

On March 12, 2012, the trial court granted temporary orders that appointed the Department as temporary managing conservator of Daughter, after finding that an aggravated circumstance existed and that appointing Mother as managing conservator was not in Daughter's best interest. On October 11, 2012, the trial court issued an interlocutory order terminating Mother's parental rights to Daughter.

On February 6, 2013, the trial court transferred the suit to another trial court in Victoria County, which had continuing exclusive jurisdiction over Daughter.[4] *See id.* § 262.203(2) (West, Westlaw through 2013 3d C.S.). The trial court further ordered that the Department shall remain as Daughter's temporary managing conservator. On September 10, 2013, on the Department's motion, the trial court vacated the interlocutory order of termination entered on October 11, 2012 on procedural grounds.

On October 15, 2013, the trial court entered a "Final Order," which appointed the Department as Daughter's permanent managing conservator and Mother as Daughter's possessory conservator. Furthermore, the trial court ordered among other things that Mother (1) shall pay for, attend, participate in, and successfully complete parenting classes no later than December 10, 2013; (2) shall submit to and cooperate fully in the preparing of the court-ordered drug and alcohol dependency assessment; (3) shall pay for and submit urine samples at times determined by the Department and hair follicle drug testing every ninety days; and (4) shall pay for, submit to, and successfully complete a substance abuse treatment program. The trial court's order stated that such drug and alcohol testing results would be considered in assessing Mother's suitability for Daughter's permanent placement.

---

[4] Prior to the transfer order, the trial court was the 267th District Court of DeWitt County.

**B. Modification Hearing**

On March 4, 2014, the Department filed a petition to modify the parent-child relationship and requested that Mother be denied visitation of Daughter for violating the trial court's October 15, 2013 order, specifically for testing positive for marijuana, failing to participate in parenting classes, and not completing a substance abuse treatment program. On March 31, 2014, the trial court held a hearing on the Department's petition to modify.

Kendra Leazer, a caseworker with the Department, testified first at the hearing. Leazer had been the caseworker on this case since 2012. According to Leazer, Mother tested positive for marijuana on December 1, 2013, tested negative for narcotics on December 16, 2013 and January 15, 2014, but tested positive for methamphetamines and marijuana on February 3, 2014. Leazer also testified that Mother failed to complete a parenting education course and drug and alcohol awareness counseling sessions. Leazer stated that Daughter is "emotionally confused" and is "not really sure who [Mother] is" because she was taken from Mother at a very young age. Daughter was now age five at the time of the modification hearing. Leazer testified that at the time of the hearing, Daughter had been living with her foster family for nearly two years and had "bonded" with that family. Leazer stated that Mother's failures in following the trial court's orders should result in the termination of her parental rights and opined that termination of Mother's parental rights was in Daughter's best interest. Leazer testified that Daughter needs "permanency."

Jill O'Neill, who has served as Daughter's counselor since 2013, also testified. According to O'Neill, Daughter had exhibited "heightened behavior concerns" since visits

4

began again with Mother. More specifically, O'Neill noted that Daughter had "crying spells" due to her inconsistent visits with Mother. O'Neill opined that by terminating Mother's parental rights and allowing Daughter's foster family to adopt her would reduce Daughter's anxiety and be in her best interest because "[s]he craves consistency[,] and she gets that from her foster family at her current placement."

Mother testified in her defense that she had missed two visits with Daughter due to her work schedule. When asked why she had not completed her court-ordered parenting classes, Mother testified that she felt that maintaining employment was her top priority to show the trial court that she was "stable" and "could provide" for Daughter. Additionally, Mother did not offer an intelligible reason for testing positive for drugs, but she admitted to using drugs in February 2014. On cross-examination, Mother admitted that Daughter would be "better off" with her foster parents, but testified that she nevertheless did not want her parental rights terminated.

At the close of the hearing, the trial court found by clear and convincing evidence that termination of Mother's parental rights was in Daughter's best interest. The trial court further found by clear and convincing evidence that Mother had (1) engaged in conduct or knowingly placed Daughter with persons who engaged in conduct which endangered Daughter's physical and emotional well-being, *see id.* § 161.001(1)(E) (West, Westlaw through 2013 3d C.S.); (2) constructively abandoned Daughter by making regular visits or significant contact with Daughter and demonstrated that she failed to provide Daughter with a safe environment, *see id.* § 161.001(1)(N) (West, Westlaw through 2013 3d C.S.); and (3) failed to comply with the provisions of the trial court's order that specifically established the actions necessary for the mother to obtain the return of Daughter, who

5

was in the temporary managing conservatorship of the Department. *See id.* § 161.001(1)(O) (West, Westlaw through 2013 3d C.S.). This appeal ensued.

## II. SUFFICIENCY CHALLENGE

By her first issue, Mother asserts that the evidence is insufficient to justify the termination of her parental rights.

### A. Standard of Review and Applicable Law

A court may order the termination of a parent-child relationship if it is shown by clear and convincing evidence that a parent has met at least one of the statutory factors listed in the family code, coupled with an additional finding by clear and convincing evidence that termination is in the child's best interest. *See id.* § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002) (noting the two-prong test in deciding parental termination and that one act or omission of conduct satisfies the first prong); *In re E.M.N.*, 221 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.).

In a legal sufficiency review, we look at all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 266. Furthermore, we must assume that the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude that the evidence is legally insufficient and render judgment in favor of the parent. *Id.*

6

We review challenges to the factual sufficiency of the evidence in a termination proceeding by giving "due deference to a [trial court's] factfindings," and we do not "supplant the [factfinder's] judgment" with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). In our review, we should "inquire 'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [ ] allegations'" from the entire record. *Id.* (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). This heightened standard of review is mandated not only by the family code, *see* TEX. FAM. CODE ANN. § 161.001, but also the Due Process Clause of the United States Constitution. *In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012) (citing *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)). We strictly construe involuntary termination statutes in favor of the parent. *Id.*

**B.     Discussion**

**1. Statutory Violation**

Mother specifically challenges the sufficiency of evidence to prove that termination of her parental rights was justified under section 161.001(1)(O), which allows the trial court to terminate one's parental rights if the child has been in the Department's custody for at least nine months, as a result of the child's removal from the parent under chapter 262 of the family code for abuse or neglect of the child, and the Department proves, by clear and convincing evidence, that the parent failed to comply with a court order that specified what she had to do to get the child back. *In re E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013) (citing TEX. FAM. CODE ANN. § 161.001(1)(O)).

In reviewing a record, we may presume that the trial court took judicial notice of the record without any request being made and without any announcement that it has

done so. *See In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also In re C.M.C.*, No. 14-12-00186-CV, 2012 WL 3871359 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, pet. denied) (mem. op.).

First, we note that the Department elicited testimony from Leazer that she has been assigned the caseworker for this case since the Department took custody of Daughter in March 2012. Furthermore, the record shows that the trial court appointed the Department as Daughter's temporary managing conservator on March 12, 2012. This appointment remained unchanged until the modification hearing on March 31, 2014, which was two years since the original appointment. Therefore, we conclude that the evidence is legally and factually sufficient to show that the Department had custody of Daughter for at least nine months prior to the termination.

Second, the Department filed a seven-page affidavit in support of removing Daughter and granting the Department custody. The affidavit described the facts and circumstances leading to the Department's involvement, including allegations of drug use by Mother in Daughter's presence, a physical fight between Mother and A.P. in Daughter's presence, and Mother's physical abuse of Daughter. The affidavit also detailed the prior termination of her parental rights to two other children in 2009 due to Mother's drug use and lack of cooperation with the Department. The Department additionally filed a companion motion to its petition for Daughter's removal, which asked the trial court to find that "aggravated circumstances" existed in this case under family code section 262.2015 related to the termination of Mother's parental rights with regard to other children due to conduct that violated section 161.001(D) or (E). *See* TEX. FAM. CODE ANN. § 262.2015. If a trial court finds that "aggravated circumstances" exist, it

8

may waive the requirement of a service plan and the requirement to make reasonable efforts to return the Daughter to a parent and may accelerate the trial schedule to result in a final order for a Daughter under the care of the department at an earlier date than provided by . . . chapter 263.

*Id.*

The trial court found that aggravated circumstances existed based upon the previous termination of Mother's parental rights in violation of section 161.001(D), ordered Daughter's immediate removal, and appointed the Department as Daughter's temporary managing conservator. Thus, this record conclusively establishes that Daughter was removed from Mother's care under chapter 262 of the family code for abuse or neglect. *See In re E.C.R.*, 402 S.W.3d at 248–49 (noting that use of the phrase "abuse or neglect" under chapter 262 is used broadly and may include "risks or threats of the environment in which the Daughter is placed").

Finally, we turn to the question of whether the evidence sufficiently establishes that Mother failed to comply with a court order that specified what she had to do to get her Daughter back. *See* TEX. FAM. CODE ANN. § 161.001(1)(O); *In re E.C.R.*, 402 S.W.3d at 240. On October 15, 2013, the trial court ordered among other things that Mother (1) pay for, attend, participate in, and successfully complete parenting classes no later than December 10, 2013; (2) submit to and cooperate fully in the preparing of the court-ordered drug and alcohol dependency assessment; (3) pay for and submit urine samples at times determined by the Department and hair follicle drug testing every ninety days; and (4) pay for submit to, and successfully complete a substance abuse treatment program. The trial court further ordered that such drug and alcohol testing results would be considering in assessing Mother's suitability for Daughter's permanent placement in the future. We construe this order as one that specifically set out the necessary steps that Mother had

to take in order for the trial court to consider her suitability for Daughter's permanent placement.

Five months following the trial court's order, Mother twice tested positive for marijuana or methamphetamines, failed to complete a parenting education course, and did not attend drug and alcohol awareness counseling sessions. These facts went undisputed by Mother, who admitted to using drugs in February of 2014 and justified missing her parenting courses and drug and alcohol counseling sessions because she felt that her employment was a priority in order to show the trial court that she was "stable" and "could provide" for Daughter. This record conclusively shows that Mother failed to comply with the trial court's numerous orders that required her compliance in order to avoid the further restriction or termination of her parental rights. *See* TEX. FAM. CODE ANN. § 161.001(1)(O); *see also In re J.F.C.*, 96 S.W.3d at 277 (finding non-compliance as a matter of law with section 161.001(1)(O) when the evidence undisputedly shows that the parents failed to comply with the court's orders affecting their parental rights).

Accordingly, we conclude that clear and convincing evidence sufficiently shows that termination of Mother's parental rights to Daughter was justified under section 161.001(1)(O).

## 2. Best Interest of the Child

Although Mother does not challenge the trial court's finding that termination of her rights is in Daughter's best interest, even if she challenged it, we would conclude that factually and legally sufficient evidence supports the finding.

In reviewing a best interest finding, we consider, among other evidence, the non-exclusive *Holley* factors. *See In re E.N.C.*, 384 S.W.3d at 807 (citing *Holley v. Adams*,

10

544 S.W.2d 367, 371–72 (Tex. 1976)).  These factors include:  (1) the child's desires; (2) the child's emotional and physical needs now and in the future; (3) any emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions.  *Id.*

Many of the same reasons that support termination under subsection O also support the trial court's best interest finding.  *See In re C.H.*, 89 S.W.3d at 28 (holding that the same evidence may be probative of both findings).  Mother has a problem with drugs.  Two times since the trial court's order, Mother tested positive for methamphetamines or marijuana.  When asked at the modification hearing to justify her drug use, Mother could not offer any justification.  Additionally, Mother failed to comply with the trial court's orders, as we previously noted, because she felt that being employed was more important than complying with the trial court's orders.  Furthermore, the Department temporarily removed Daughter at the age of three from Mother's care based upon allegations of drug use by Mother in Daughter's presence, a physical fight between Mother and Daughter's biological father, and Mother's physical abuse of Daughter.  We also note that the trial court found "aggravated circumstances" for Daughter's removal under section 262.2015 due to the 2009 termination of Mother's parental rights to two older children.

Since her removal from Mother's custody, Daughter has been in the care of foster parents. According to Leazer, Daughter is "emotionally confused" because she is uncertain as to the identity of her mother. Leazer testified that Daughter has bonded with her foster family, where she had resided for the last two years. O'Neill described Mother's visits with Daughter as inconsistent and attributed this inconsistency to Daughter's increase in "crying spells." Each witness for the Department testified that terminating Mother's parental rights was in Daughter's best interest. Mother herself admitted that Daughter was "better off" with her foster family.

We conclude that there is legally and factually sufficient evidence for a reasonable trier of fact to have formed a firm belief or conviction that terminating Mother's parental rights was in Daughter's best interest. Mother's first issue is overruled.

### III. VALIDITY OF THE TERMINATION ORDER

By her second issue, Mother asserts that the trial court's findings for termination of her parental rights based upon section 161.001(1)(E) and (N) are void for failing to conform to the pleadings.

Twenty different courses of conduct serve as the first prerequisite for terminating a parent's right to a child. *See* TEX. FAM. CODE ANN. § 161.001(1)(A)–(T). The Texas Supreme Court has held that violation of "any one" of the section 161.001(1) factors is enough to satisfy the first prerequisite of the termination statute. *See In re J.F.C.*, 96 S.W.3d at 261. In Part II(A)(1) of this opinion, we concluded that legally and factually sufficient evidence supports the trial court's finding that Mother violated subsection O of section 161.001. As a result, even if we were to address the merits of Mother's second issue, it would be of no consequence because we have concluded that sufficient evidence

12

supports a finding under subsection O.  Accordingly, Mother's second issue is overruled.

*See* TEX. R. APP. P. 47.4.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
GINA BENAVIDES,
Justice

Delivered and filed the
23rd day of October, 2014.