

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

No. 08-25-00180-CV

In the Interest of D. G. and A. G., Children

On Appeal from the 65th District Court
El Paso County, Texas
Trial Court No. 2024DCM3400

## MEMORANDUM OPINION

Appellant, A.G., (Mother) appeals from the trial court's order terminating her parental rights to her minor children, D.G. and A.G. (the children). Following a bench trial, the trial court found that termination was in the best interest of the children and that the Department of Family and Protective Services (the Department) had proven grounds for termination under subsection (N) (constructive abandonment) and former subsection (O) (failure to comply with a court order),

of § 161.001(b)(1) of the Texas Family Code.[1] The trial court further appointed the Department as permanent managing conservator of the children.

On appeal, Mother argues that the evidence is legally and factually insufficient, that she received ineffective assistance of counsel, and that the final hearing was improperly held by videoconference rather than in person. Because we agree that the evidence is legally insufficient to support the trial court's order terminating Mother's parental rights, we reverse that portion of the order and render judgment denying the Department's request to terminate Mother's parental rights. We affirm the trial court's order in all other respects.

## I. BACKGROUND

On June 25, 2024, the Department filed an Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship, seeking conservatorship of the children and termination of Mother's parental rights.[2] The Department asserted six termination grounds, alleging Mother (1) knowingly placed or allowed the children to remain in endangering conditions or surroundings; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children; (3) relinquished her rights; (4) constructively abandoned the children; (5) failed to comply with a court order establishing the actions necessary for her to obtain the children's return from the Department's conservatorship; and (6) failed to complete a court-ordered substance abuse treatment program or

---

[1] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N), (b)(2); Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Tex. Gen. Laws 2012, 2015, *repealed by* Act of May 14, 2025, 89th Leg., R.S., ch. 211, §§ 2, 4, 2025 Tex. Sess. Law Serv. 573, 574–75. We note that although the Legislature repealed subsection 161.001(b)(1)(O) effective September 1, 2025, the change in law only "applies to a suit affecting the parent-child relationship that [was] pending in a trial court on the effective date of [the] Act and that [was] filed on or after the effective date of [the] Act." Act of May 14, 2025, 89th Leg., R.S., ch. 211, § 3, 2025 Tex. Sess. Law Serv. 573, 576. Therefore, because this suit was pending in this Court on September 1, 2025, and not in the trial court, we apply the law that was in effect at the time the suit was pending below.

[2] The Department also sought and obtained termination of the children's father's parental rights. He did not appeal from the judgment and is therefore not a party to this appeal.

continued to abuse a controlled substance after having endangered the children by using a controlled substance. *See* Tex. Fam. Code Ann. §§ 161.001(b)(1)(D), (E), (K), (N), (P)[3]; Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Tex. Gen. Laws 2012, 2015 (repealed 2025). The Department further sought to be appointed as the children's permanent sole managing conservator under §§ 153.005, 153.131, 153.191, and 263.404. *See* Tex. Fam. Code Ann. §§ 153.005, 153.131, 153.191, 263.404.

### A. Pretrial proceedings[4]

On June 25, 2024, the trial court issued an Order for Protection of a Child in an Emergency and Notice of Court Proceeding. In the order, the trial court appointed the Department as the temporary sole managing conservator of the children and appointed counsel, Celia Villasenor, as a temporary attorney ad litem for Mother.

On July 25, 2024, after extending the emergency order twice, the trial court issued a Temporary Order Following Full Adversary Hearing. At that time, the trial court appointed the Department as the temporary managing conservator of the children. The court also found that Mother was indigent and continued Villasenor's appointment as attorney ad litem for Mother.

On December 9, 2024, the trial court held an initial permanency hearing. Mother did not appear at the hearing, and Villasenor announced not ready. The trial court declined to return the children to Mother at the hearing.

On March 24, 2025, the trial court held a permanency hearing. Mother again did not appear, and Villasenor announced not ready. The trial court once again declined to return the children to Mother.

---

[3] We note that, with the repeal of former subsection (O), subsection (P) of section 161.001(b)(1) has been moved and is now subsection (O). *See* Act of May 14, 2025, 89th Leg., R.S., ch. 211, §§ 2, 4, 2025 Tex. Sess. Law Serv. 573, 576.

[4] The record does not include reporter's records for any pretrial hearing in this case.

## B. The final hearing

The trial court held the final hearing in this case on June 13, 2025. Neither Mother nor counsel Villasenor appeared at the hearing. Instead, attorney Rosendo Torres appeared on Mother's behalf.

On announcing his appearance, Torres stated he was "standing in for [Villasenor] on the respondent father." After the court inquired as to which father counsel represented, the assistant county attorney representing the Department indicated that Villasenor represented the mother. Torres stated, "I had it wrong then," and the following exchange ensued:

The Court: I thought you said father.

Mr. Torres: I did. I did because I thought [Villasenor] in her e-mail and her text said that her client was a father. Maybe I read it wrong, but she hadn't been able to talk to him or her in a while. But anyway --

The Court: Yeah, it shows [Villasenor] is the mother. [sic]

Mr. Torres: I am here on behalf of [Villasenor] and I don't know if the respondent mother is here, Judge.

The Court: I don't see anybody by that name nor the father either.

Mr. Torres: And if she happens to log on, Judge, I would ask that you give me a few minutes and putting [sic] us in a breakout room so I can introduce myself. Otherwise, [Villasenor] indicated she hasn't had contact with her client.

The Court: Okay. If she comes on, I'll let you know.

The court then turned to the Department to present its case. In response, the Department stated that because neither Mother nor Father was present, the Department "would like to do [sic] offer exhibits 1 through 17. I would move for their admission of just 1 through 17 into evidence as well as proffer the remaining testimony into the record if the court would so allow."

When the court asked if there were any objections, Torres stated, "I did not receive any instructions from [Villasenor] regarding the exhibits, so I am not going to take a position without

4

having any instructions. I have not seen the exhibits." Torres did not ask to see the exhibits, nor did he request a continuance.

With no objection, the trial court admitted the following exhibits:

- Pictures of each of the children (exhibits 1 and 2);

- Returns of citation for Mother and Father (exhibits 3 and 4);

- Service plans for Mother and Father from meetings held on August 6, 2024, October 16, 2024, and February 25, 2025 (exhibits 5, 6, 8, 9, 10);

- An "Update to the Court," indicating that "Family Plans," based on a "Service Plan meeting" held on August 6, 2024, were enclosed, with the attached "Family Plans" (exhibit 7);

- A "Status Report to the Court" filed on August 8, 2024, providing information to the court about the children's medical status and placement and requesting that the court order Mother and Father to engage in specified activities (exhibit 11);

- A "Status Hearing Order" signed by the trial court on September 23, 2024, finding that Mother's visitation with the children must be supervised and adopting the service plan as a court order (exhibit 12);

- A "Visitation/Contact/Restriction Plan" filed on July 5, 2024, establishing contact restrictions between Mother and the children (exhibit 13);

- Visitation plans for Mother and Father filed on February 3, 2025, February 7, 2025, and March 7, 2025 (exhibits 14, 15, 16); and

- An "Order on Motion to Consolidate" (exhibit 17).

The trial court next asked if anyone objected to the Department's request to submit testimonial evidence through a proffer. Torres replied, "No objections, Judge."

The Department proceeded to represent what the evidence would show if the Department were to call the witnesses. According to the Department, the witnesses would have testified to the following alleged facts:

- Law enforcement had conducted a criminal investigation on May 22, 2024, "where a gun was in the presence of the children";

5

- Mother admitted to a Child Protective Services (CPS) investigator that she was addicted to crack cocaine, that she used methamphetamines on May 21, 2024, that she used methamphetamines daily, and that "there is fentanyl and methamphetamine use in that household";

- "The children were removed and on June 25, 2024," the trial court entered an emergency order granting the Department temporary managing conservatorship of the children;

- The CPS investigator concluded, after speaking with Mother, Father, and the children, that "there was reason to believe for neglectful supervision in this case";

- Mother failed to comply with the requirements of her service plans, by failing to maintain stable employment, finish parenting classes, complete domestic violence classes, and submit to random drug tests;

- Mother also failed to attend visitation, as she attended 4 out of 59 visits in 2024, began visiting more regularly in January 2025, but the last time she visited both children was "April 14, 2024 [sic]";

- Mother admitted "that she had began [sic] taking drugs again"; and

- Mother completed "an OSAR assessment" and maintained stable housing for some time.

The Department did not, however, call a single witness to testify at the hearing.

After the proffer, the Department argued that the evidence showed Mother constructively abandoned the children and failed to comply with court order provisions. When asked by the trial court about the children's best interests, the Department argued that the children were living with the paternal aunt and her husband; that the children were doing well and progressing; that Mother had not demonstrated an ability to provide a safe environment; that the children were receiving education and medical care; and that the children had been removed due to family violence, with an incident in which "[a] gun was actually brought out by mother where law enforcement were called."

When the Department concluded its argument, the court asked if there was anything further from the parties, at which time Father's counsel asked to confirm the Department's plan for the children. In response, a discussion occurred between the court; Father's counsel; the Department's

6

counsel; Itzayana Rodelo, a departmental caseworker; and Maria Holmes, the CASA advocate acting as the guardian ad litem for the children. In the casual conversation, for which none of the putative witnesses were sworn in, the participants came to the following understanding: the paternal aunt recommended that A.G. be placed with her and D.G. be placed with the paternal grandmother; CPS thought "right now grandma is not probably the best place to place them"; and both the aunt and the grandmother wanted to adopt the children.

At the conclusion of the hearing, the court found that it was in the children's best interest to terminate Mother's parental rights. The court then asked if there was anything further, to which Mother's counsel stated, "No, Judge."

### C. Post-hearing proceedings in the trial court

After the hearing, on June 13, 2025, the trial court signed an "Order of Termination." In the order, the trial court found that terminating Mother's parental rights was in the children's best interest. It also found two statutory grounds for terminating Mother's parental rights: that Mother had constructively abandoned the children and that she had failed to comply with the provisions of a court order establishing the actions necessary for a return of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N); Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Tex. Gen. Laws 2012, 2015 (repealed 2025). The trial court therefore terminated Mother's parental rights to the children. In addition, the trial court found "that the appointment of [Mother] as permanent managing conservator of the children is not in the children's best interest because the appointment would significantly impair [the] children's physical health or emotional development." The trial court therefore appointed the Department as permanent managing conservator of the children. Finally, the court ordered that Villasenor would continue to represent Mother.

7

Mother timely appealed on July 3, 2025.

Mother, through Villasenor, also filed a motion for new trial in the trial court on July 10, 2025. In the motion, Mother contended the evidence was legally and factually insufficient to support the court's judgment and best interest determination. Mother also argued that there was new evidence the court should consider and that she had "a meritorious defense to the cause of action alleged in this case."

The trial court neither held a hearing nor ruled on the motion for new trial; as a result, the motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

### D. Proceedings on appeal

Villasenor filed a "Motion to Abate Appeal" on Mother's behalf on August 1, 2025. In the motion, Mother sought an abatement of the appeal to file a motion for mediation and because she had filed a motion for new trial. Mother requested an abatement "pending resolution of the motion for new trial and mediation."

We denied the motion to abate on August 6, 2025.

On August 13, 2025, Villasenor filed a brief on Mother's behalf pursuant to *Anders v. California*, 386 U.S. 738 (1967). Contrary to Mother's position in the motion for new trial, Villasenor indicated to this Court that she "has conducted a conscientious examination of the case, a diligent review of the record, transcript and applicable authority and determined an absence of meritorious grounds for appeal[.]" Villasenor argued the evidence was legally and factually sufficient to support the trial court's order terminating Mother's parental rights. In conjunction with filing the *Anders* brief, Villasenor moved to withdraw as Mother's counsel.

On September 18, 2025, after independently reviewing the entire record, this Court determined that at least one arguable ground for appeal existed. We granted Villasenor's motion to

withdraw, remanded the case to the trial court, and ordered the trial court to appoint new counsel to represent Mother on appeal.

On September 25, 2025, the trial court appointed Kirk Cooper to represent Mother for purposes of this appeal.

Cooper filed a brief on Mother's behalf on October 15, 2025, raising three issues on appeal: that the evidence was legally and factually insufficient to support the trial court's order terminating Mother's parental rights; that the termination judgment should be reversed because Mother received ineffective assistance of counsel; and that the termination judgment should be reversed because the trial court improperly held the final hearing via videoconference.

In response, the Department filed a letter brief on October 17, 2025, conceding the evidence was factually insufficient to support the termination order and requesting a new trial.

After this Court ordered the Department to brief the legal sufficiency point of error, the Department filed a second letter brief on October 30, 2025, conceding the evidence was also legally insufficient to support the trial court's termination order.

## II. LEGAL SUFFICIENCY OF THE EVIDENCE

Generally, when a party presents multiple grounds for reversing a trial court's judgment, we first consider the issues that would provide the party with the greatest relief. *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999); *see also FieldTurf USA, Inc. v. Pleasant Grove Ind. Sch. Dist.*, 642 S.W.3d 829, 836 (Tex. 2022) ("[C]ourts of appeals should 'first address issues that would require rendition' and thus should consider those issues before ordering a remand." (quoting *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 201–02 (Tex. 2003)). We therefore first consider Mother's legal sufficiency challenge. *See Int. of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (holding that rendition of judgment would generally be required if the evidence

was legally insufficient to support a trial court's termination order); *Int. of K.W.*, 138 S.W.3d 420, 428 (Tex. App.—Fort Worth 2004, pet. denied) (holding that an appellate court should first consider issues that would afford the greatest relief and first addressing the parent's legal sufficiency challenges).

## A. Standard of review and applicable law

A parent's right to the care, custody, and control of her children is one of constitutional magnitude. *See Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *Int. of K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Parental rights are not, however, without limitation. *See Int. of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). A court may therefore terminate a parent's right to her children if the State proves "by clear and convincing evidence both that: (1) the parent committed an act prohibited under Texas Family Code section [161.001(b)(1)], and (2) termination is in the children's best interest." *Int. of E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see* Tex. Fam. Code Ann. § 161.001(b)(1), (b)(2). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007.

When we review the legal sufficiency of a trial court's order terminating a parent's rights to her children, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that" the parent committed an act prohibited under Texas Family Code § 161.001(b)(1) and that termination is in the children's best interest. *Int. of J.F.C.*, 96 S.W.3d at 266. We must "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* We must also disregard any evidence the factfinder could reasonably have found not credible, but we should

10

not disregard undisputed facts. *See id.*; *Int. of G.C.S.*, 657 S.W.3d 114, 128 (Tex. App.—El Paso 2022, pet. denied).

If we conclude, after conducting a legal sufficiency review, that "no reasonable factfinder could form a firm belief or conviction that" the parent committed a prohibited act or that termination is in the children's best interest, then we must conclude the evidence is legally insufficient. *Int. of J.F.C.*, 96 S.W.3d at 266. "Rendition of judgment in favor of the parent [is] generally required if there is legally insufficient evidence." *Id.*

**B. Analysis**

In her first issue on appeal, Mother argues, in relevant part, that the evidence was legally insufficient to support the trial court's order terminating Mother's parental rights under subsection (N) and former subsection (O) of § 161.001(b)(1) of the Texas Family Code. In its October 30, 2025 letter brief, the Department stated that it "agrees the evidence is legally insufficient to support the trial court's termination of parental rights." We agree with the parties.

**(1) The record evidence**

During the final hearing, counsel for the Department made a number of statements purportedly representing what the evidence would have shown if the Department had called its witnesses to testify. The Department did not, however, call any witnesses or elicit any testimony from them. The statements provided by counsel were not made under oath and did not indicate that counsel was tendering evidence based on counsel's personal knowledge. As a result, we do not consider counsel's statements regarding what the evidence would have shown to be evidence, and we will not treat such statements as evidence. *See Estate of Brown*, 704 S.W.3d 428, 436 (Tex. 2024) ("[A]n attorney's unsworn statements may be considered evidence 'when the circumstances clearly indicate that the attorney is tendering evidence on the record based on

personal knowledge and the opposing party fails to object.'" (quoting *Vaccaro v. Raymond James & Assocs.*, 655 S.W.3d 485, 491–92 (Tex. App.—Fort Worth 2022, no pet.)).

Thus, the evidence in this case consists of the Department's 17 admitted exhibits during trial.[5] As Mother's counsel did not object, we will assume without deciding for the purposes of this appeal that the evidence includes the unsworn statements made by the Department's caseworker and the CASA advocate. *Toledo v. Texas Alcoholic Beverage Comm'n*, No. 09-01-209CV, 2001 WL 1692169, at *3 (Tex. App.—Beaumont Jan. 10, 2002, pet. denied) (per curiam) (not designated for publication) (citing *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997); Tex. R. App. P. 33.1(a)(1)).

### (2)   Predicate ground (N): constructive abandonment

To terminate parental rights based on constructive abandonment under subsection (N), the State must prove by clear and convincing evidence that: (1) the children had been in the conservatorship of the Department for not less than six months; (2) the Department made reasonable efforts to return the children to the parent; (3) Mother failed to regularly visit or maintain significant contact with the children; and (4) Mother demonstrated an inability to provide the children with a safe environment. Tex. Fam. Code Ann. § 161.001(b)(1)(N); *Int. of M.J.G.*, No. 08-23-00037-CV, 2023 WL 3875066, at *4 (Tex. App.—El Paso June 7, 2023, no pet.) (mem. op.).

Here, the February 25, 2025 service plan, which was the most recent service plan entered in evidence, indicates: "On February 13, 2025, [Mother] stated being back to live with maternal

---

[5] Although the record does not reflect that the trial court took judicial notice of its file, we may presume that the trial court took judicial notice of its file and the file's contents. *See Int. of A.H.*, No. 09-19-00025-CV, 2019 WL 2220306, at *4 (Tex. App.—Beaumont May 23, 2019, pet denied) (mem. op.); *Int. of J.E.H.*, 384 S.W.3d 864, 869–70 (Tex. App.—San Antonio 2012, no pet.). "A court may not, however, take judicial notice of the *truth* of the allegations in its records." *Int. of J.E.H.*, 384 S.W.3d at 870 (emphasis in original) (quoting *Tschirhart, v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ)).

grandmother, . . . and having an interview at her previous job at Tacos Chinampa to start working as a server during the weekends"; "[I]t is unknown if [Mother has] a physical living condition that is not threatening for the health and/or safety of the children"; Mother had attended an intake assessment on February 3, 2025, for a "Parenting Awareness & Drug Risk Education Program," and would be taking weekly classes; Mother "ha[d] been attending parent-child visits regularly"; Mother had been admitted in January 2025 to the El Paso Behavioral Health System for a substance use detox, was discharged on January 22, 2025, was referred to outpatient services, and was attending services five days per week; and Mother had attended an intake assessment for a Battering Intervention & Prevention Program on February 18, 2025, at which she "admitted to physical and verbal abuse towards her ex-partner," and was scheduled to start a domestic violence course. The record contains no evidence related to Mother's visitations with the children or her ability to provide the children with a safe environment after the creation of this service plan.

Because the record evidence indicates that Mother "ha[d] been attending parent-child visits regularly," we must conclude that no reasonable factfinder could have found that Mother failed to regularly visit or maintain significant contact with the children. In addition, based on the evidence in the record, we conclude that the State failed to prove that, as of June 13, 2025—the date of the trial—Mother had demonstrated an inability to provide the children with a safe environment. Accordingly, we conclude that the evidence is legally insufficient to support the trial court's order terminating Mother's parental rights under the predicate ground for constructive abandonment.

### (3) Former predicate ground (O): failure to comply with a court order

To terminate parental rights based on a parent's failure to comply with a court order under former subsection (O), the State was required to prove by clear and convincing evidence that: (1) the children were removed from Mother under Chapter 262 of the Family Code due to abuse or

neglect; (2) the children had been in the conservatorship of the Department for at least nine months; and (3) Mother "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the [children]." Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Tex. Gen. Laws 2012, 2015 (repealed 2025); *see Int. of E.C.R.*, 402 S.W.3d 239, 243, 246 (Tex. 2013) (holding "that subsection O requires proof of abuse or neglect"). "[W]hether removal . . . was for abuse or neglect depends on the surrounding facts and circumstances and is generally determined on a case-by-case basis." *Int. of S.M.R.*, 434 S.W.3d 576, 583 (Tex. 2014).

As an initial matter, the State has not directed us to, and we are unable to find, after a thorough review of the record, evidence establishing the reasons for the children's removal.[6]

In addition, the February 25, 2025 service plan indicates that Mother was working on several requirements. There is no evidence showing that she ultimately failed to accomplish any of the actions described in the service plan. Specifically, there is no evidence in the record establishing whether Mother completed the required service plan actions between the date of the service plan (February 25, 2025) and the date of the trial (June 13, 2025). The Texas Supreme Court has made it clear that:

> [t]erminating the parent-child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal. In determining whether the Department has

---

[6] We recognize that the clerk's record contains an affidavit in support of the Department's original petition and a finding in the trial court's Order for Protection of a Child in an Emergency and Notice of Court Proceeding that "there is an immediate danger to the physical health or safety of the children or the children have been the victims of neglect or sexual abuse." Nevertheless, because "the trial court may not take judicial notice of the *truth* of factual statements and allegations contained in the pleadings, affidavits, or other documents in the file," neither the affidavit nor the finding constitute evidence showing the children in this case were removed by the Department for abuse or neglect. *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see Int. of J.E.H.*, 384 S.W.3d at 870 (holding that "the trial court could not take judicial notice of the allegations the caseworker made in the family service plan"); *Int. of K.F.*, 402 S.W.3d 497, 505 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that a "trial court may take judicial notice of its own files but may not take judicial notice of the *truth* of factual statements and allegations contained in the documents contained therein") (emphasis original).

14

established grounds for termination under (O), the trial court should consider the nature and degree of the parent's alleged noncompliance and the materiality of the disputed plan requirement in achieving the plan's stated goal.

*Int. of R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023).

As a result, we conclude that no reasonable factfinder could have formed a firm conviction or belief that the children were removed from Mother due to abuse or neglect or because Mother failed to comply with the provisions of a court order establishing the actions necessary for her to obtain the return of her children. *See* Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 9, sec. 161.001(1)(O), 1997 Tex. Gen. Laws 2012, 2015 (repealed 2025) (authorizing parental termination if a parent failed to comply with a court order establishing the actions necessary for the parent to obtain the children's return when the children were removed "for the abuse or neglect of the child[ren]"). Accordingly, we conclude that the evidence is legally insufficient to support the trial court's order terminating Mother's parental rights under the former predicate ground for failing to comply with a court order.

### (4) Conclusion

Because the evidence is legally insufficient to support the trial court's termination order under either of the predicate grounds found by the trial court, we determine that the evidence is legally insufficient to support the trial court's order terminating Mother's parental rights.

In light of this conclusion, we do not address Mother's remaining issues on appeal.

### III. CONSERVATORSHIP

In its October 30, 2025 letter brief, the Department argues that Mother does not challenge the trial court's conservatorship appointment thereby implying that this Court should affirm the portion of the trial court's order appointing the Department as managing conservator of the children. We agree.

15

Texas Family Code §§ 153.005 and 153.131 are alternate grounds on which the Department may be appointed as the managing conservator of the children. *See Int. of J.A.J.*, 243 S.W.3d 611, 615 (Tex. 2007). As a result, a challenge to the trial court's conservatorship order based on those grounds is not subsumed in a challenge to a trial court's termination decision; a parent must separately appeal from a trial court's conservatorship order. *See id.*; *Int. of J.C.H.-P.*, 673 S.W.3d 262, 266–67 (Tex. App.—San Antonio 2023, no pet.); *cf. Int. of D.N.C.*, 252 S.W.3d 317, 319 (Tex. 2008) (holding that when no findings were made under § 153.131 that would independently support the trial court's conservatorship order, the challenge to the conservatorship order was subsumed in the appeal of the parental-rights termination order).

Here, Mother does not address the portion of the trial court's order appointing the Department as permanent managing conservator of the children. The record reflects, however, that in its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship, the Department sought to be appointed as permanent sole managing conservator of the children under §§ 153.005 and 153.131 of the Family Code. In its Order of Termination, the trial court found that appointment of Mother "as permanent managing conservator of the children is not in the children's best interest because the appointment would significantly impair [the] children's physical health or emotional development" and that appointment of the Department as managing conservator was in the children's best interest. It therefore appointed the Department as the permanent managing conservator of the children. "These findings satisfy not only the fundamental requirement that the court consider the best interest of the child[ren], but also the more specific findings necessary to justify the Department's appointment under section 153.131." *Int. of J.A.J.*, 243 S.W.3d at 615 (internal citation omitted).

16

Accordingly, we conclude that reversal of the portion of the trial court's order appointing the Department as managing conservator is not warranted. *See id.* at 615, 617.

## IV. CONCLUSION

We reverse only the portion of the trial court's order that terminates Mother's parental rights to D.G. and A.G., and we render judgment denying the Department's petition seeking such termination. We affirm the trial court's order in all other respects.

LISA J. SOTO, Justice

November 24, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

17